JAMES D. EDWARDS, Administrator, Appellee, v. JAMES KIRK, Appellant.

No. 44892.

DECEMBER 12, 1939.

S. G. Bammer and William S. Johnston, for appellee.

J. W. Morse and Kern & Faville, for appellant.

HAMILTON, J.—Action by plaintiff-appellee as administrator

of the estate of his minor son to recover damages for the death of such minor, growing out of a collision between a motorcycle, upon which the said minor was riding as a guest, and the appellant's automobile. The answer was (1) a general denial; (2) that the driver of the motorcycle was negligent, which negligence was the sole and proximate cause of the injury; (3) contributory negligence of plaintiff's decedent; (4) that plaintiff's decedent assumed the risk of the negligent operation of the motorcycle by the driver thereof. On motion, the trial court struck from the answer the defense of assumption of risk, and it is from this ruling of the trial court that this appeal is taken.

It is the contention of the appellant that the doctrine of assumption of risk has been recognized by this court as being applicable to a guest in automobile cases, and, if plead and proven, is a valid defense. He cites and relies upon White v. McVicker, 216 Iowa 90, 246 N. W. 385, and Stingley v. Crawford, 219 Iowa 509, 258 N. W. 316. If it was a valid defense, then it was error to strike the same and, since the matter striken from the answer was of a character such as to involve the merits and to materially affect the final decision of the case, the order was appealable.

We then have the sole question as to whether or not the appellant had a right to plead in his answer the defense of assumption of risk. Appellant does not claim that the plaintiff's decedent assumed the risk of negligent acts upon the part of the appellant, James Kirk. The thing contended for is that appellant had the right to plead as a defense that appellee's decedent voluntarily exposed himself to the negligent and reckless operation, by his brother, of the motorcycle upon which he was riding as a guest; that his injuries proximately resulted from such operation; and that he had assumed the risk thereof.

In making this claim, appellant recognizes the rule that, generally speaking, the doctrine of assumption of risk, in the strict sense the term is used under the common law, is limited to cases arising or growing out of some kind of contractual relationship such as master and servant, but he asserts that there is another sense in which the term "assumption of risk" has been used which does not depend on a contractual relationship and that is where the plaintiff, by his conduct, has brought himself within the operation of the maxim, volenti non

fit injuria, and, therefore, cannot recover. This maxim has been defined to be: "That to which a person assents is not esteemed in law an injury", or "He who consents cannot receive an injury."

Appellant points out that our court recognized this doctrine in the case of White v. McVicker, supra, where the subject is fully discussed. That was a guest case, but appellant contends the rule is equally applicable in an action by the guest against a third party even though no contractual relationship exists. In that case, it is recognized and mention is made of the fact that the reference to this doctrine as assumption of risk was perhaps a misnomer, but, regardless of what it is called, the holding is expressed in the following language [216 Iowa 90, 91, 246 N. W. 386]:

"We held in these guest cases that contributory negligence is not available as a plea. Siesseger v. Puth, 213 Iowa 164, 239 N. W. 46. But the question with which we are now confronted is not controlled by the Siesseger case. While the doctrine of contributory negligence and assumption of risk may arise under the same set of facts and sometimes thus overlap each other, yet we have consistently distinguished them and held that they are distinct and separate and must not be confounded with each other. * * * [Citing long list of cases].

"As to the doctrine we are about to discuss, the use of the term 'assumption of risk' is probably a misnomer, but the court seems to have generally used the term, and we will follow its practice of using this term to indicate this doctrine."

The court then discusses some of the decisions and finally makes application of the rule in the following pronouncement:

"The sum total of the application of this doctrine simply stated is that, where one is placed in the position where he has his choice of doing or not doing a given act, this doctrine applies. We take it to be the rule, therefore, under this doctrine, that, where one voluntarily becomes a guest in an automobile, with a knowledge that the driver is incompetent or inexperienced, or after he has assumed his position in the car, it comes to his knowledge that the driver is intoxicated, or is reckless in his driving, and with such knowledge on his part he aids or encourages the driver, or acquiesces or joins or co-operates in

such recklessness, he takes the chance of an accident, and, in case an accident occurs, arising from such known incompetency, inexperience, or intoxication of the driver, or other such known recklessness, then plaintiff cannot recover."

It is because of our holding in the above case that appellant has seen fit to tender this doctrine as a defense in the fourth division of his answer and which he contends the court erroneously struck from the files, on the ground that it was not a proper defense.

In states which have so-called "guest statutes", such as ours, Code 1935, section 5026-b1, the courts are of necessity driven to the adoption of some such rule as that announced in the McVicker case in order to find any basis upon which the guest might be barred from recovery. The cause of action, under our guest statute, is not based on negligence, but upon recklessness, and, since we have held that "recklessness is more than negligence, it follows that contributory negligence is not an element to be considered or dealt with, either by pleading, proof or instruction of the court, in cases brought under this statute." Siesseger v. Puth, supra [213 Iowa 164, 239 N. W. 54]. Courts and textbook writers generally recognize the fact that there is a distinction between the doctrine of assumption of risk and contributory negligence. This fact is mentioned in the McVicker case. A very simple and easily understood illustration of the difference is given in Cooley on Torts, Throckmorton's Student Edition, 1930, section 331, page 658, as follows:

"The doctrine of assumption of risk is sometimes confused with that of contributory negligence, but is properly to be distinguished from it. A pedestrian knowing that the walk on one side of the street is in a dangerous condition assumes the risk of injury from it when he leaves a safe walk on the other side to pass over it, whereas, contributory negligence in such case would consist in the failure to use ordinary care under the circumstances while actually using the walk. Assumption of risk involves more or less deliberation, whereas contributory negligence implies lack of care, and hence the absence of deliberate choice."

The Vermont court, in a well-considered case, Gover v. Central Vermont R. Co., 96 Vt. 208, 118 A. 874, 877, reviews

the authorities dealing with this question and lays down some specific rules to be observed in applying the maxim above referred to as follows:

"If the application of the maxim 'volenti non fit injuria' is recognized as extending beyond contractual relations, the limitations of the doctrine of assumption of risk based thereon must be looked for in the terms of the maxim itself. Any other course would be illogical, and the limitation could not escape being purely artificial. Courts that have adopted the contractual limitation have experienced this difficulty. Tested by the maxim, what are the limitations of the doctrine as applied to the case in hand? It is said in Warren v. Boston & Maine R. R., 163 Mass. [484] 488, 40 N. E. 895, that the doctrine of assumption of risk, as distinguished from the doctrine of reasonable care, in an action between persons not having relations by contract, must be confined to cases where the plaintiff knew and appreciated the danger and voluntarily put himself in the way of it. To the same effect is Gentzkow v. Portland Ry. Co., 54 Or. 114, 102 P. 614, 135 Am. St. Rep. 821; Illingsworth v. Boston Elec. Co., 161 Mass. 583, 37 N. E. 778, 25 L. R. A. 552. It is not enough that the plaintiff knew and appreciated the danger. Was it a voluntary act within the meaning of the maxim? To be voluntary, an act must be done of one's own free will. The word emphasizes the idea of freedom from constraint. Webster's New Int. Dic. The true meaning of the volens of the maxim is referred to as 'intelligent choice' in Thomas v. Quartermaine, 18 Q. B. Div. 685; and the same idea is aptly expressed in Chicago, etc. R. Co. v. Lewis, 103 Ark. 99, 145 S. W. 898, where it is said that the doctrine is based on voluntary exposure to a known danger, and can be applied only when a person may 'reasonably elect' whether or not he shall expose himself to it. We said in Carbine's Admr. v. Bennington & Rutland R. Co., 61 Vt. 348, 17 Atl. 491, which was a master and servant case, that the doctrine applied if the servant 'knowingly and deliberately assumes a risk that leads him into immediate danger.' In effect the English cases hold that mere knowledge of the risk does not necessarily involve consent to the risk, and that the maxim does not apply on the mere showing of knowledge of the danger, but only where the circumstances are such as warrant the inference that the plaintiff encountered the risk freely and volun-

tarily with full knowledge of the nature and extent thereof. Thomas v. Quartermaine, supra; Yarmouth v. France, 19 Q. B. Div. 647; Smith v. Baker, 60 L. J. (N. S.) 683; Broom's Legal Maxims, (7th Ed.) 219. Lord Chancellor Halsbury expresses the opinion in Smith v. Baker that, in order to defeat a plaintiff's right by the application of the maxim, when he would otherwise be entitled to recover, the jury ought to be able to affirm that he consented to the particular thing being done which would involve the risk, and consented to take the risk upon himself.''

The Connecticut court, which has a guest statute, has adopted a rule very similar to that announced in the McVicker case and in the above case from Vermont. In Freedman v. Hurwitz, 116 Conn. 283, 164 A. 647, the driver of the automobile, in which plaintiffs were riding as guests, had complained of being tired and sleepy and suggested that he might need to be nudged or pinched by his companions to keep him from falling asleep. Shortly thereafter, he collided with another car under circumstances indicating he must have fallen asleep. The guests brought suit against the driver, their host. Assumption of risk was set up as a defense. In discussing and applying the doctrine under the aforesaid maxim, the court said:

·''The principle of assumption of risk expressed in the maxim volenti non fit injuria has had its most frequent application in our jurisprudence in cases involving the common-law liability of a master for injury suffered by his servant in the course of his employment. The principle is, however, one of broad application. 1 Beven, Negligence (4th Ed.) p. 790; and for historical discussion see his article, 8 Jour. Soc. Comp. Leg., 185. We have held it applicable between a landlord and a tenant where the latter leases premises in an open, visible, and dangerous structural condition. Valin v. Jewell, 88 Conn. 151, 156, 90 A. 36, L. R. A. 1915B, 324; Brandt v. Rakauskas, 112 Conn. 69, 73, 151 A. 315. Nor is the principle restricted to cases where there exists a contract relationship between the parties. Worden v. Gore-Meenan Co., 83 Conn. 642, 647, 78 A. 422; 1 Pollock, Torts (13th Ed.) 170. Under certain circumstances it may operate in the field of negligence. Kebbe v. Connecticut Co., 85 Conn. 641, 645, 84 A. 329, Ann. Cas. 1913C, 167; Marks v. Dorkin, 105 Conn. 521, 136 A. 83, 61 A. L. R. 1224; Kalamian v. Kalamian, 107 Conn. 86, 89, 139 A. 635; Miner v. Connecticut

River R. Co., 153 Mass. 398, 403, 26 N. E. 994. When applicable in negligence actions, the principle is distinct from that of contributory negligence; as we said in French v. W. W. Mertz Co., 116 Conn. 18, 163 A. 457, the defendant may admit his own negligence and the plaintiff's lack of contributory negligence and still claim that he is not liable, upon this principle. See 1 Beven, Op. Cit. p. 788; Pollock, Op. Cit. p. 170. Hence the fact that contributory negligence is not a defense to an action based upon reckless misconduct under the 'Guest Statute' does not in itself prevent the defense of the assumption of risk in a proper case.

"The principle operates, however, in a rather strictly limited field. Because the essence of the doctrine is the assumption of the risk, the injured person must or ought reasonably to have perceived that it existed, and because it is the risk which is assumed the injured person must have appreciated it, or the situation must be such that he ought reasonably to have appreciated it and realized that unless he took steps to protect himself he would be liable to injury. Baer v. Baird Machine Co., 84 Conn. 269, 273, 79 A. 673. Of its application in an action by a servant against his master, we have said: 'A servant assumes the risk when he knows the defective condition of an instrument, appreciates the danger from its use, and voluntarily encounters the risk. * * * Knowledge in this connection means either actual or constructive knowledge.' Elie v. C. Cowles & Co., 82 Conn. 236, 239, 73 A. 258, 259. Moreover, the incurring of the risk must be really voluntary. If the continued exposure of the injured party to the risk is due to his inability reasonably to escape after he becomes or should become aware of it and appreciates or should appreciate the danger, or if the continuance of his subjection of himself to it is the result of influences or circumstances which are the real inducement to his course of conduct, the doctrine does not apply. Elie v. C. Cowles & Co., supra, page 241 of 82 Conn., 73 A. 258. The doctrine 'is based, entirely upon voluntary exposure to danger, and can only be applied in cases where the person may reasonably elect whether or not he shall expose himself to it. The exposure may be without physical coercion, yet the circumstances may be such as would render it unreasonable for a person to exercise his election not to proceed in that way.' Chicago, R. I. & P. R. Co. v. Lewis, 103 Ark. 99,

104, 145 S. W. 898, 900; Gover v. Central Vermont R. Co., 96 Vt. 208, 118 A. 874.

"One is entitled to assume that another will exercise proper care until he perceives or ought reasonably to perceive that that other is not doing so, and he does not assume the risk that another will by some sudden negligent act or omission subject him to danger. Stout v. Lewis, 11 La. App. 503, 123 So. 346. A pedestrian crossing a highway and injured by the negligent operation of an automobile upon it, or the driver of one car injured by collision with another, may be guilty of contributory negligence, but he does not assume the risk of the sudden negligent act or omission of the party who caused the collision. 1 Pollock, Torts, 173. So the mere fact that there is a possibility known to the guest in an automobile that the driver may be guilty of a negligent act or omission may not be a sufficient basis upon which to hold that he has assumed the risk. Marks v. Dorkin, supra, page 524 of 105 Conn., 136 A. 83 [61 A. L. R. 1224]. And the doctrine can only apply where the particular situation or condition producing the risk has continued for such a length of time that the party alleged to have assumed it can be found to have known it or been charged with knowledge of it, to have appreciated the risk to which he was subjected by it, either actually or because he ought reasonably to have done so, and to have had an opportunity to avoid it."

In the light of the foregoing thorough and able exposition of the doctrine, as confined within the terms of the maxim "volenti non fit injuria", it would seem quite apparent that the pleaded facts in the division of the answer which was stricken do not present a case for the application of this principle. Here we have two vehicles proceeding down the street in the same direction. As the automobile, driven by defendant which was in the lead, neared the intersection, the driver extended his hand signalling his intention to make a left-hand turn. At about the same time, the driver of the motorcycle, upon which the plaintiff's decedent was riding as a guest, undertook to pass the automobile on the left. There was a collision just beyond the intersection on the left-hand side of the street. Presumably, the nearness of the motorcycle to the automobile in the intersection thwarted the automobile driver's intention to complete the turn. The immediate danger was the collision at the intersection. This could not

have possibly existed for more than a few seconds of time. The most that this thirteen-year-old boy could have possibly done would have been to speak to his brother and call his attention to the signal from the driver of the other vehicle, or to the intersection and request that he slow down or pass to the right. There was no time for deliberation; no opportunity to choose. To jump would have been certain injury. He was suddenly caught in a trap not of his own choosing, but due to the combined action of the drivers of the two vehicles over which he had no control. There is no allegation that his brother was in the habit of driving in a reckless manner. The allegations of negligence set forth in the fourth division of the answer, which was stricken, are prefaced with this statement:

"That *just prior to* the time of the collision between the said motorcycle and the defendant's automobile the said Maurice Edwards was negligently and recklessly operating the motorcycle being driven by him in the following particulars: * * * "

It is true that, after the grounds of negligence are set out, it is stated that:

"The said conditions under which the motorcycle was being driven, and the manner of the operation thereof by the said Maurice Edwards, were known to the plaintiff's decedent to exist at the time and place of the collision described in the plaintiff's petition, and *for a substantial time prior thereto. * * * "* (Italics ours.)

The two phrases, "just prior to" and "for a substantial time prior thereto", contained in the excerpts from the pleading are relative terms, but, when read in the light of our own common knowledge, of which we take judicial notice, the time must be measured in comparatively few seconds. The last paragraph above-quoted from the Connecticut case is applicable to the situation presented in the instant case.

The question has not been of easy solution. As stated in 18 R. C. L., page 671:

"Few subjects of the law have a more obscure and complicated terminology than that appertaining to the doctrine of assumption of risk. Even the most casual investigation discloses a perplexing and often quite unintelligible array of propo-

sitions. And commentators usually have concluded that a reconciliation of all of the statements relating to the subject is an impossible task."

In our investigation, we have been greatly aided by the thorough and able discussion of counsel and the earnestness with which appellant has pressed his contention has prompted us in carefully reading all of the authorities cited and the conclusion reached has been after giving careful consideration to the question. We are unwilling to introduce into the law pertaining to the many cases based on negligence, growing out of automobile collisions, the doctrine contended for by appellant.

There was no error in the trial court's ruling and the case is, therefore, accordingly, affirmed.—Affirmed.

CHIEF JUSTICE and all JUSTICES concur.