ROBERT AGANS, appellee, v. GENERAL MILLS, INC., and VINCENT SHOCKLEE, appellants.

No. 47878.

(Reported in 48 N.W. 2d 242)

June 5, 1951.

Rehearing Denied September 21, 1951.

Hallagan & Lucier, of Des Moines, and Charles D. Van Werden, of Winterset, for appellants.

Killmar & Reynoldson, of Osceola, and Daniel J. Gallery, of Winterset, for appellee.

SMITH, J.—Plaintiff was injured while riding in a car belonging to defendant General Mills, Inc., a Delaware corporation, and being driven by defendant Shocklee. The corporation's business was the manufacture and sale of grain products and feeds. Shocklee was a promotion man and sales representative of the company. Plaintiff was owner of a general feed store at Murray, Iowa, and had a contract with defendant company (negotiated by Shocklee) for sale and distribution of its products in an area which included the scene of plaintiff's injury.

On February 12, 1948, plaintiff and Shocklee were on a trip (contemplated by the contract) over a part of the territory. Somewhere between Murray and Lorimor they were joined by Don Henrichs, a customer, and drove on into Lorimor about noon.

After lunch and some time spent in a tavern they proceeded north on highway 169 toward Winterset. Henrichs and a man named Roy Adams were with them. Henrichs sat behind Shocklee, the driver, and plaintiff on the right rear seat behind Adams.

Just south of Winterset they collided with or sideswiped a car that was coming from the north and then struck a pickup truck and turned over, killing Adams and severely injuring plaintiff. The present action resulted. There was a verdict and judgment for plaintiff from which defendants appeal.

I. Plaintiff, as appellee, has moved for a dismissal or affirmance on the ground of defendants' alleged failure, in brief and argument, to specify assignments of error in compliance with our rule 344, R.C.P. It is unnecessary here to determine at just what point we might feel justified in resorting to such an extreme measure as dismissal of an appeal on this ground. Ordinarily the offender is most apt to be the sufferer if he fails to present his case in accordance with the rules which are designed to enable him to do so in the most effective manner.

We deem it our duty to dispose of appeals on their merits whenever it can be done, as it can here, without injustice to the complaining party; and the motion is accordingly denied.

II. Defendants' first and perhaps most strenuous contention is that plaintiff was guilty of contributory negligence as a matter of law. It seems to be based on the proposition that plaintiff knew when they left Lorimor, or that he as a reasonably prudent person should have known, that Shocklee was intoxicated; and that by voluntarily becoming a passenger in the car driven by Shocklee plaintiff was guilty of contributory negligence.

Guest-statute cases are relied on in which it has been held so-called "assumption of risk" may be pleaded as an affirmative defense. They are not directly in point here. See White v. McVicker, 216 Iowa 90, 246 N.W. 385; White v. Zell, 224 Iowa 359, 276 N.W. 76; Garrity v. Mangan, 232 Iowa 1188, 6 N.W.2d 292; Hansen v. Nelson, 240 Iowa 1298, 39 N.W.2d 292; Augusta v. Jensen, 241 Iowa 697, 42 N.W.2d 383.

However, we have held in effect that in a proper case, based on negligence, facts that would in a guest case be competent as evidence of assumption or "acceptance" of risk may constitute evidence of contributory negligence. Miller v. Mathis, 233 Iowa 221, 8 N.W.2d 744; Hansen v. Nelson, supra.

But of course in such a case the issue cannot be resolved as a matter of law if the evidence is in dispute as to whether plaintiff assumed the risk knowingly; or as to whether, after it became known to him, he acquiesced in it and failed to take such steps for his own safety as would be taken by a reasonably prudent person under like circumstances.

We find such dispute here. Defendants argue that because "the accident occurred within a very few minutes after the party left the tavern, Shocklee *must* have been intoxicated * * * and his condition *must* have been known to the plaintiff for the reason that they had spent the greater part of the afternoon together * * * where alcoholic beverages were dispensed."

This purported summary puts the strongest emphasis possible on Shocklee's own testimony. It ignores the rule that we are required to view the evidence in the light most favorable to the party against whom the motion is directed. According to Shocklee they arrived in Lorimor about noon and repaired to Walt's Tavern and "had one bottle of beer", standing at the bar to drink it. They then spent an hour and a half at lunch and another "half hour or so" visiting Henrichs's brother at his filling station.

They returned to the tavern, "ordered three pint size bottles of beer" and before starting to Winterset "had two additional bottles of beer." He added: "I didn't drink any other beer at any place nor any intoxicating liquors * * *." He also said: "During the afternoon we went out of Walt's at least twice while we were there."

Plaintiff testified: "While I was waiting for Henrichs and Shocklee to go, I talked with some men about their livestock and feeding problems. I don't know whether they remained in the tavern all that time or not." He said he drank no beer after lunch and did not know whether the others "remained in the tavern all that time or not."

Henrichs's testimony is vague: "I drank a third bottle of beer. * * * I don't know whether Agans was sitting there or not,

but I got up and walked around. * * * I saw Shocklee drink a couple of beers. I only saw Agans drink one."

Furthermore, the record here is replete with uncontradicted testimony as to Shocklee's normal appearance when they left Lorimor. Plaintiff testified: "As we got into the car and started to drive away from Lorimor, I didn't notice anything unusual about Shocklee or his driving at that time."

Defendant Shocklee said that when they started for Winterset: "I didn't show any effects of being intoxicated at that time. To my knowledge, I didn't stagger, was able to carry on a normal and competent conversation with those about me. I didn't feel as though I were intoxicated * * *. In my opinion when I came out of the tavern to get into my car, I wasn't intoxicated. There wasn't anything about me, my actions, appearance or demeanor that would give any appearance of my being intoxicated."

Henrichs as a witness for defendant testified: "When we came out of the tavern, I didn't see anything that would indicate to me that Shocklee was intoxicated. I didn't see anything unusual about his actions."

In the face of this testimony it would be quite impossible to hold plaintiff failed to present a jury question on the issue of his own freedom from contributory negligence. He testified: "When we first left Lorimor, for the first three or four miles he [Shocklee] traveled a very normal speed. I would say about forty or fifty miles an hour. After he turned on the radio, we began to pick up speed."

At one point, a little later, according to his testimony, when the speedometer had mounted to over seventy miles an hour on a winding road he yelled at Shocklee to "slow it down, I would like to get there in one piece" and Shocklee replied, "Don't get excited Bob."

The details of the accident are unessential. We have no doubt there was a case for the jury on this issue of contributory negligence.

III. A serious question urged by the appeal is the complaint of the conduct of plaintiff's attorney in closing argument to the jury when he is alleged to have said that "defendant, Shocklee, will never pay one cent of any amount you find that he should

pay, and * * * if he is forced to pay one cent of any amount, I will personally reimburse him for it."

None of the jury arguments for either party was reported and no objection was urged by defendants when the alleged language was used. The case went to the jury and verdict for plaintiff was returned and judgment thereon entered May 19, 1950. Defendants were granted additional time to file "any motions or applications as provided for under R.C.P. 243 and 244." On June 20, 1950, they filed a request that the court sign their "Bill of Exceptions" in which the alleged misconduct was for the first time brought to the attention of the trial judge. There was attached to the proposed "Bill of Exceptions" affidavits of two of defendants' attorneys.

There was also a "Division II" denominated "Motion to set aside verdict and judgment and for a new trial."

Plaintiff filed resistance contending there was no record of the alleged misconduct, that the affidavits were not competent evidence of any such misconduct and that the "Bill of Exceptions is not provided for or contemplated by either R.C.P. 243 or R.C.P. 244."

The trial court made a finding (based apparently on the judge's own recollection and on admissions of plaintiff's attorney made at the hearing) that the alleged statement was in substance made in argument in the presence and hearing of both court and jury.

However, the motion to set aside verdict and for new trial was overruled, the court pointing out that since the arguments were not reported there was no showing here (as in McCornack v. Pickerell, 225 Iowa 1076, 283 N.W. 899, where all the arguments were taken down) that would permit the court to say the language complained of was not fairly responsive to the arguments of defendants' counsel. The court also commented that no objection was urged by counsel on either side to any of the arguments and distinguished the situation from that shown in Burke v. Reiter, 241 Iowa 807, 42 N.W.2d 907, where the trial court was upheld in granting a new trial, urging as one consideration improper argument of counsel not excepted to at the time it was made.

984

The trial court here stated that while in the Burke v. Reiter case "other matters were suggested as having a cumulative effect in accounting for the apparent disregard by the jury of practically unquestioned evidence * * * in the present case no question is raised as to the sufficiency of the evidence."

We are not disposed to condone the practice of fighting fire with fire in closing arguments to juries. (See comment in Blair v. Madison County, 81 Iowa 313, 317, 46 N.W. 1093, 1094.) Two wrongs never make right. But, on the other hand, we cannot encourage belated complaints made long after the event and after the complaining party has remained silent and taken his chance with the jury, knowing the arguments are not being reported. Such complaint (made thirty days after verdict in the instant case) postponed until no accurate record of what was said by both parties could be presented must be viewed critically, if not with downright suspicion. When (or if) counsel on either side oversteps the bounds of proper argument, prompt steps should be taken by the other to make the event of record when the matter is fresh in everyone's mind, and the trial court given opportunity to take whatever proper steps are possible to repair the damage without necessitating a trial anew. Blair v. Madison County, supra.

In the instant case there is grave doubt that the extension of time granted defendants after verdict "to file any *motions* or *applications* as provided for under R.C.P. 243 and 244" was sufficient or intended to be sufficient to extend the time for settling *bill of exceptions* provided for by R.C.P. 241. Under R.C.P. 247 such additional time could have been granted ("not to exceed thirty days") for filing not only motion under rule 243 (for judgment notwithstanding verdict) or rule 244 (for new trial) but also "exceptions under rule 241."

The order as made ("with plaintiff's consent") did not so provide and the "Bill of Exceptions" was filed long after the normal ten days allowed in absence of special order. Nevertheless, we would be reluctant to reverse on that technicality had the trial court waived it and granted a new trial, affirmatively finding the alleged misconduct was not provoked by some unfair argument on behalf of defendants. On the contrary the court expressly stated: "In the present case there is no record from which the court can

find that the alleged improper remarks * * * were not called for by reason of the arguments of defendants' counsel."

Counsel for defendants were apparently not disturbed by the argument when made. They might have moved promptly for a mistrial then or at the close of the argument. They elected to await the jury's decision, if indeed they thought any serious error had been committed. Like the trial court we are powerless now to grant them relief, even assuming (a matter we do not pass on) that any real reversible error was committed.

IV. Defendants argue the verdict for $18,000 was excessive and the result of passion and prejudice. It is possible the amount is greater than we, as jurors, would have allowed. But that is beside the point. We find no indication that the verdict was born of passion and prejudice. The jury has a wide discretion in assessing damages for personal injury. Bailey v. Fredericksburg Produce Assn., 229 Iowa 677, 688, 295 N.W. 122; Bachelder v. Woodside, 233 Iowa 967, 979, 9 N.W.2d 464.

The evidence here shows severe injury—some of it permanent—a slanting fracture of the femur, fracture of both tibia and fibula, injury in the abdominal cavity, head bruises and contusions and shock. Plaintiff was in the hospital sixty-six days suffering intense pain. At the end of that time he had to be taken home on a stretcher in the ambulance and was condemned to a further thirty-day confinement in bed. Later he got to his store in a wheel chair and still later with crutches and iron braces. Even at the time of trial (May 1950) over two years after the injury he still had to use crutches on occasion and was affected with nervousness, sleeplessness and shortness of memory.

At the time of his injury he was about twenty-eight years old, able bodied and sound, an early riser, active and vigorous physically and mentally. At time of trial he was disqualified for heavy work, still suffering pain, one leg shorter than the other and unable to drive his car long distances. His hospital and medical expense was $1407.05. His loss of earnings during the time he was actually laid up and since cannot of course be accurately measured.

The doctor who attended him throughout testified that the condition of plaintiff's nervous system and his sensitivity would be permanent.

986

Always difficult to appraise, damages for personal injury are doubly difficult to compute under the present unsettled and inflated conditions of currency standards. We agree with the trial court's conclusion: "With the record * * * as it is the court cannot say as a matter of law that the * * * verdict is excessive."

█ V. Defendants were denied leave at the close of the evidence to amend their answers to conform to proof. There is no merit to their assignment of error on that ruling. One issue they desired to present was that Shocklee was confronted by a sudden emergency or peril not of his own creation; another was contributory negligence by "assumption of risk."

There was no evidence to support the first; and defendants had full benefit of the second issue under our practice, without affirmatively pleading it. The court properly denied the request.

Finding no error to justify a reversal the judgment is affirmed.—Affirmed.

All JUSTICES concur.