WILFRED V. POWERS, appellee, v. JAMES K. HATCHER, appellant.

No. 51643.

(Reported in 135 N.W.2d 114)

834

May 4, 1965.

Steward, Crouch & Hopkins, of Des Moines, for appellant.

J. P. Denato, of Des Moines, for appellee.

Thornton, J.—This case was tried as a "guest" case, even though plaintiff was not riding in the motor vehicle at the time of accident but changing a tire. No issue is raised on this aspect of the case. Plaintiff at the time of the accident involved here was chairman of the Warren County Committee of the Agricultural Stabilization and Conservation Service. Defendant was the office manager of the ASCS program in the county. The county committee of which plaintiff was chairman hired defendant as office manager; it has the last word in hiring and firing the office manager. The managership is a full-time position, the committee members part-time. On February 28, 1961, plaintiff and defendant were going to Nevada, Iowa, to attend a feed-grain program meeting. They, together with a Mrs. Owens, a chief clerk in

defendant's office, were riding in defendant's 1960 Ford. While driving through Des Moines the right rear tire went flat. Plaintiff and defendant started to change the tire. Plaintiff was removing the lug nuts on the right rear wheel while defendant attempted to jack up the car with a bumper jack. Before the operation was completed the car fell on plaintiff's hand crushing it against the spinner wrench he was using to loosen the wheel nuts. Plaintiff contended defendant negligently assembled the bumper jack and this was the cause of the car falling. The jury returned a verdict for plaintiff.

Defendant appeals, urging for reversal: (1) plaintiff was a guest as a matter of law (2) refusal to instruct as requested and erroneous instructions given, and (3) no causal connection.

I. The enumeration of the following three situations when a passenger is not a guest within the meaning of section 321.494, Code of Iowa, 1962, where the passenger is riding (1) for the purpose of performing his duty as servant of the owner or operator of the car (2) for the benefit of the owner or operator, or (3) for the mutual benefit of owner or operator and the passenger, is not exclusive. This is pointed out in Hansen v. Nelson, 240 Iowa 1298, 1303, 39 N.W.2d 292, 295. In fact there is nothing in Knutson v. Lurie, 217 Iowa 192, 251 N.W. 147, or in the many cases since then wherein such enumeration has been set out to so indicate. As pointed out in Hansen v. Nelson, supra, where the operator and the passenger are in the performance of service for their common employer it is not necessary that the driver derive any special benefit. Neither is invited by the other. To like effect is Spring v. Liles, 236 Ore. 140, 387 P.2d 578. It is there pointed out to avoid the guest-host relationship it is not always necessary to show a benefit to the owner or operator either special to the owner or operator or mutual to both the owner or operator and the passenger.

Section 321.494 provides protection to the owner or operator of a motor vehicle from claims for damages based on ordinary negligence brought by "any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire." Its purpose was to protect the "Good Samaritan." Bookhart v. Greenlease-Lied Motor Co., 215 Iowa 8, 244 N.W. 721,

82 A. L. R. 1359; and Nielsen v. Kohlstedt, 254 Iowa 470, 473, 117 N.W.2d 900. When benefits are to be considered, we say benefits to the operator or owner as are incidental to hospitality, social relations, companionship or the like are not definite and tangible benefits as are contemplated. Nielsen v. Kohlstedt, 254 Iowa 470, 474, 117 N.W.2d 900. Where the jury can find the relationship is not a social one, that the owner or operator is not a "Good Samaritan", but that the relationship of the operator and passenger is that of coemployees in furtherance of their employment in transportation as directed by their employer, there is no need to look for benefits. They are not guest and host. The purpose of the statute has been satisfied. When the above has been shown, it follows—if we wish to stretch that far—the operator, if he is paid by the employer, receives a benefit, see Thompson v. Lacey, 42 Cal.2d 443, 267 P.2d 1, 3, and that each is mutually benefited because by such means he is able to carry out his employment. Certainly no other benefit is necessary, nor should the jury be allowed to speculate whether such constitutes a sufficient benefit.

In this case plaintiff pleaded:

"3. That the plaintiff and the defendant Hatcher were employed by the Warren County Iowa Agricultural Stabilization and Conservation Service on and prior to February 28, 1961, and were acting in such capacity on said date at the time of the accident hereafter set out and were, in fact, on their way to a business meeting at Nevada, Iowa, in connection with said employment."

Defendant moved to dismiss because plaintiff had not stated a cause of action under the guest statute. Plaintiff then amended paragraph 3 above by adding, "That the plaintiff was the defendant's employer and the purpose of said journey had to do with such employment." The trial court overruled defendant's motion.

Defendant contends there is a failure of proof under rule 106, Rules of Civil Procedure, because it is apparent plaintiff was attempting to plead an employee-employer relationship between plaintiff and defendant to avoid the guest statute and plaintiff wholly failed to prove such. In this we believe defend-

ant is mistaken. The general meaning of paragraph 3 of plaintiff's petition as amended could hardly be construed to mean plaintiff was defendant's actual employer responsible for payment of his salary. It is pleaded both of them were employed by the ASCS in Warren County. The evidence showed this and both were paid by the federal government. It also showed plaintiff was chairman of the county committee which had the right to hire and fire defendant, in other words, plaintiff was defendant's superior. We think paragraph 3 as amended could only properly be read in that light, that such was its general meaning. We have examined the contract cases cited by defendant and do not find them apposite here. They are, Ross v. Miller, 254 Iowa 1364, 121 N.W.2d 124; Sanford v. Luce, 245 Iowa 74, 60 N.W.2d 885; Snater v. Walters, 250 Iowa 1189, 98 N.W.2d 302; Hughes v. Keokuk & Hamilton Bridge Co., 204 Iowa 1229, 210 N.W. 451; Heim v. Ressel, 162 Iowa 75, 143 N.W. 823; and Saatoff v. Scott, 103 Iowa 201, 72 N.W. 492. Porter v. Decker, 222 Iowa 1109, 270 N.W. 897, is a guest case but it does not reach the point urged. It holds it is error to instruct on benefit to the driver and mutual benefit when plaintiff's evidence only supports an employee-employer relationship.

The other evidence bearing on the trip taken by plaintiff and defendant showed they were directed by the state office to attend the meeting at Nevada and that plaintiff as chairman had at different times received letters from the state committee telling them to cut down on travel expenses and as many travel in one car as possible. The person driving the car was paid seven cents a mile. They arranged between them to ride in defendant's car. Neither of them had any personal motives to go to Nevada that day. In his testimony defendant states they were going to Nevada to a feed-grain program. He would have received the same mileage if he traveled alone. There was no showing of a tangible benefit to defendant other than the mileage and the mutual benefit to both of carrying out the duties of their employment.

Defendant contends correctly plaintiff had the burden of proving he was not a guest. Delay v. Kudart, 256 Iowa 523, 128 N.W.2d 201; and Morrow v. Redd, 257 Iowa 151, 131 N.W.

2d 761. In support of his contention the plaintiff did not prove he was other than a guest he cites Broadwater v. Coleman, 224 F.2d 186 (10 Cir. 1955); Nielsen v. Kohlstedt, 254 Iowa 470, 117 N.W.2d 900; Haas v. Owens, 248 Iowa 781, 81 N.W.2d 654; and Clendenning v. Simerman, 220 Iowa 739, 263 N.W. 248.

The Broadwater case deals with the Kansas statute. The plaintiff was a court reporter. The defendant a judge in the same district in Kansas. Each of course was required to attend court as provided by statute and each was paid travel expenses by the state. The reporter was free to travel to the places where court was held in any manner he saw fit. At this point is the difference between the Broadwater case and this one. Here the evidence showed both plaintiff and defendant were directed to travel in the same car where possible. They were carrying out the official direction of their superior in riding in the same car. This was their duty.

In the Nielsen case plaintiff and defendant were coemployees merely going to work and there was no direction by their employer that they should ride as they did.

In the Haas case plaintiff and defendant were nurses attending a polio clinic. They were attending for their own purposes, no question of employment is involved.

In the Clendenning case the defendant was an employee of another passenger's father, but there was no relationship between plaintiff and defendant other than social.

Under our holding in Hansen v. Nelson, 240 Iowa 1298, 39 N.W.2d 292, plaintiff here made a case for the jury on the guest issue when he showed he and defendant were coemployees in furtherance of their employment and riding in the same car at the direction of their employer.

In addition to Spring v. Liles, 236 Ore. 140, 387 P.2d 578, cited above, the following support our holding here, Bailey v. Pennington, 274 F.2d 328 (8 Cir. 1960); Tucker v. Landucci, 57 Cal.2d 762, 371 P.2d 754; and Dobbs v. Sugioka, 117 Colo. 218, 185 P.2d 784, on the theory of mutual benefit. That a business relationship creates a mutual benefit see Thuente v. Hart Motors, 234 Iowa 1294, 15 N.W.2d 622; and Doherty v. Edwards, 227 Iowa 1264, 1269, 1270, 290 N.W. 672.

■ II. Defendant contends it was error to refuse to give his requested instruction on the issue of benefit to the defendant and the instruction given on this issue was in error because it did not make clear that any benefit to the defendant must result from the carriage of plaintiff and the mere fact plaintiff and defendant had a common interest in the trip is not sufficient to render the benefit derived such compensation as to make plaintiff anything other than a guest.

Though it is not necessary to instruct on special benefit to the driver or mutual benefit when the driver and passenger are coemployees traveling in the driver's car at the direction of their employer, if it is to be instructed on it should be limited to and state the remuneration received from the employer, whether such be the payment of mileage, or wages or salary is such benefit. Thompson v. Lacey, 42 Cal.2d 443, 267 P.2d 1; Spring v. Liles, 236 Ore. 140, 387 P.2d 578; and Hansen v. Nelson, 240 Iowa 1298, 39 N.W.2d 292.

In answer to paragraph 3 of plaintiff's petition set out above, defendant admitted plaintiff and defendant were employees of the ASCS and acting as such as alleged by plaintiff. This left as the only question to be determined to establish plaintiff was not a guest, whether they were traveling as directed by their employer. Plaintiff testified they were. Defendant did not testify on this issue.

■ In his reply, defendant contends the testimony of plaintiff as follows, "Different times as chairman I would receive a letter from the State Committee telling us to cut down on travel expenses and as many travel in one car as possible.", is no evidence defendant had to take plaintiff to Nevada or lose his mileage payment. His aim here is wide of the mark. It undoubtedly is true that if these men had traveled in separate cars their mileage would have been paid. But it was their duty to follow the directive of their superior in the matter of travel expenses and travel together where possible. Even though the determination of this question was left to them, it was their duty to follow this directive. When by their actions they are following this directive they are not host and guest. A third employee was also in the car.

Defendant, in support of his contention relative to the instructions, cites Nielsen v. Kohlstedt, 254 Iowa 470, 117 N.W.2d 900; and Haas v. Owens, 248 Iowa 781, 81 N.W.2d 654. In these cases there was no evidence to support a finding the driver and passenger were traveling as directed by their employer.

III. Defendant contends his motion to direct should have been sustained because there was insufficient evidence of a causal connection between the negligence alleged and the accident. The negligence submitted was the defendant improperly assembled the jack and so used it as to cause it to fly apart and allow the car to fall. Defendant contends there is no evidence the jack improperly assembled could support and lift the car and no explanation as to why the jack would suddenly come apart.

The jury could properly find, not only from plaintiff's testimony but from defendant's testimony as well, that plaintiff was removing the lug nuts from the right rear wheel, defendant was using the bumper jack, that defendant had improperly assembled the jack, he had actually lifted the car to nearly a height which would be sufficient to remove the tire when the car fell, plaintiff's hand was crushed by the fender against the wrench he was using, and that the jack did in fact fly apart. Plaintiff testified, "I think later in the hospital Mr. Hatcher said that it flew apart. As I remember he described it that the jack flew apart." Defendant testified:

"I think I have said that the jack flew apart and my reasoning on that would be that I didn't see the actual separation from the jack, this is simply a description of my opinion that after the car fell the two pieces were separated, * * *."

Both plaintiff and defendant testified the car did not move forward or backward, nor laterally during the jacking operation or fall; the car fell straight down. The defendant testified he did not have trouble with the jack on prior occasions. He used it about a half dozen times. And it was fair to conclude on the other occasions it was properly assembled.

There is ample direct evidence the car was lifted by the improperly assembled jack, that the car fell and immediately the jack was on the ground, the part to be affixed to the bumper

842

separated from the upright part of the jack. Other movement of the car to cause the fall is excluded.

Defendant's chief reliance here is on the testimony of a quality control expert called by plaintiff. As pointed out by defendant, this expert did testify:

"Q. Do you have any idea from your experience as an engineer whether or not that jack would fly apart if used in that position [improper] to lift the right rear of a 1960 Ford? A. No, I do not."

However, this is not all of this witness's testimony. He did testify, in answer to questions relative to whether the jack would fly apart when improperly assembled:

"I would say it is reasonable to assume because of your demonstration here. * * * I wouldn't know. I wouldn't attempt to use it in that position. * * * I will only state it can't be used this way. * * * It may or may not come apart. * * *."

When asked whether the jack properly assembled would come apart, he stated, "That is the way it is designed to work, and it works that way. * * * It would not come out."

The jury could properly find the probable cause of the car falling on the plaintiff's hand was the improper assembling of the jack. Plaintiff's testimony is direct, that defendant in a position to see said "the jack flew apart." Defendant's explanation of what he saw and said may be considered circumstantial, that he "reasoned" the jack flew apart because it was separated after the car fell. Wigmore's Code of Evidence, rule 28, article 1, paragraphs 201–203; article 2, paragraphs 204–206. The expert testimony is more than a possibility though the expert did testify he did not know, as pointed out by defendant. From the sum total of his testimony the jury could find it was reasonable to believe the jack would separate when improperly assembled, that it was not designed to work that way and that when properly assembled it would not come apart.

This is not a case resting solely on expert testimony as were Tracy v. Liberty Oil Co., 208 Iowa 882, 891, 226 N.W. 178, and Christensen v. Northern States Power Co. of Wisconsin, 222 Minn. 474, 25 N.W.2d 659. Nor is the manner in which the accident happened obscure as in Schmidt v. Hayden, 205 Iowa 1369,

1372–1374; 219 N.W. 399, and in McCready v. United Iron and Steel Co., 272 F.2d 700, 703 (10 Cir. 1959), where no one saw the accident or knew how it happened. The jack in this case is not an intricate machine, its operation could be demonstrated. From a demonstration when improperly assembled the expert did say it was reasonable to assume it would come apart and when properly assembled it would not.

The evidence here is not circumstantial, as in Ford Motor Co. v. Mondragon, 271 F.2d 342 (8 Cir. 1959). Nor does the evidence show several possible causes as in Davis v. Firestone Tire & Rubber Co., 196 F. Supp. 407.

Looking back from the result here, the car falling, and from a fair consideration of the facts based upon common human experience and logic, there is nothing particularly unnatural or unreasonable in connecting the fall of the car with the improperly assembled jack. The improperly assembled jack could be found to be a producing cause of the car falling. There is nothing in the evidence to sustain any other cause of the car falling. Anthes v. Anthes, 255 Iowa 497, 507, 122 N.W.2d 255; Christianson v. Kramer, 255 Iowa 239, 249, 122 N.W.2d 283; Chenoweth v. Flynn, 251 Iowa 11, 18, 99 N.W.2d 310; and Buchanan v. Hurd Creamery Co., 215 Iowa 415, 424, 246 N.W. 41.— Affirmed.

All JUSTICES concur except HAYS, J., not sitting.