DUNLAP, APPELLEE, *v.* ROBINSON, APPELLANT.*

(No. 350—Decided April 19, 1955.)

*Mr. Henry W. Wolf* and *Mr. Edward Flahive,* for appellee.
*Messrs. Marriott & Marriott* and *Mr. Clyde E. Lewis,* for appellant.

PUTNAM, J. The plaintiff, appellee herein, recovered a judgment against the defendant, appellant herein, after a jury verdict for injuries received when he was struck by defendant's automobile. The plaintiff, a married man 68 years old, was an employee of the State Highway Department, and, at the time of the accident, he was engaged in his duties as a flagman on a road repair job. He suffered a compound fracture of one leg, resulting in its being shortened, a shoulder separation and severe scalp lacerations, resulting in total permanent disability. The amount of the verdict was about $11,000. This

*Motion to certify the record overruled, October 13, 1955.

appeal on questions of law results with the following assignments of error:

1. The court erred in overruling the motion of the defendant for a judgment notwithstanding the verdict.

2. The court erred in overruling the motion of the defendant for a new trial.

3. The court erred in overruling defendant's motion for a directed verdict at the close of all the evidence in the case.

4. Error of the court in its general charge to the jury.

5. Error in the awarding of excessive damages, appearing to have been given under the influence of passion or prejudice.

6. The judgment rendered is against the weight of the evidence and contrary to law.

The facts of the case, with inferences therefrom most favorable to the plaintiff, as shown by the record, are substantially as follows:

State route No. 37 runs east and west through Delaware, Ohio. It is a blacktop road about 16 feet wide with a dividing line in the center. On September 7, 1951, the State Highway Department was engaged in repairing such road west of Delaware. According to the testimony of Richard Paul, county highway superintendent, under whose supervision the work was being done, they were resurfacing the road from the west corporation line of the city of Delaware west to state route No. 203. They had started at route 203 and were working east. The process consisted of cleaning the road and applying hot tar to it as a binder and to raise up surplus tar and then apply Kentucky Rock Asphalt. This created a slippery condition. They were doing one half of the road at a time and maintaining one way traffic. On September 7, 1951, they were working on the south side of the road. There were two traffic signs at each end of the construction, one a road work sign, and the other a one-way traffic sign. There were red flags on each sign. These signs were on the berm. The road work sign was a considerable distance east of the project at the top of a grade which slopes to the west; and the one-way traffic sign was about 300 feet east of the place where the plaintiff was injured. The road slopes down to the west to a fill over a ravine and it has guard rails on each side, then the road slopes up a grade and around

a bend westward. Because of the obscure view of the area of work, as an additional precaution, there was a flagman at each end of the project. The plaintiff was the flagman at the east end of the project. He had a red flag about 2 feet square on a stick, which flag he used to stop traffic, and another red flag which was used to pass back and forth to insure one way traffic through the project. At the time in question, they were "passing the flag." The plaintiff was stationed at the dip of the road in the area of the guard rails.

The time of the injury was about noon. The defendant, a man about 80 years old, and his wife had gone from their home west of Delaware to Delaware the morning of the accident on route 37, and they had passed the construction. It was on the defendant's return trip that the injury occurred. The plaintiff had passed the carry flag to the west end of the construction, and it had not yet returned. Witness Cunningham, a truck driver, was carrying the flag east. He had just rounded the curve at the top of the grade to the west. He testified that there was a tar truck on the south side of the road just west of the guard rail, and that he saw the impact the instant after it happened. He drove up to the scene and observed the situation.

The plaintiff testified that he saw the defendant coming 200 to 300 feet away. The plaintiff flagged the defendant by holding up and waving the flag. The defendant, when about 100 feet from the plaintiff and after having slowed up some, turned across the white line partially into the south lane; and when the defendant was 60 to 70 feet away, the plaintiff stepped across the white line about 20 inches, holding the red flag across the road. The defendant came on and struck him. The defendant did not appear at the trial. He was ill. However, his deposition was read. The substance of his testimony is that when he came to Delaware that morning, he was given the flag at the west end of the construction area and told to carry it to the east end, which he did. On his return trip, defendant was travelling about 30 to 35 miles per hour as he got to the top of the grade about 500 feet from the flagman, whom he saw standing in the middle of the north lane waving his flag. He started slowing up and pulled to the left, so that part of his car was across the white line. He thought the flagman was going to hand him the

flag; and he said that the flagman jumped in front of his car before he could stop it.

The deputy sheriff, who arrived shortly and questioned the defendant, who was still sitting in his car which had not been moved, stated that there was fresh tar on the south side of the road just west of the scene of the injury and extending on up over the hill. This corroborates the testimony of Cunningham as to the tar truck. He also testified that at that time defendant explained the accident as follows:

"Q. Did you ask him any questions concerning this accident? A. Yes. When I first went there he was setting under the wheel, and I believe his wife was with him.

"Q. Yes. A. In the front seat. And I asked him what had happened and he said he was driving down the road and said he saw this man—he didn't know what his name was then, which was Mr. Dunlap. He saw him near the berm at the hard surface, right at the berm there close to the edge of the road. And he said that as he approached he waved his flag and he said that he looked ahead in his lane, which would be the north lane, and didn't see anything in his lane and didn't see any—didn't see the reason, you know, for him to stop. And so he was travelling on and he said that the man moved out on, you know, towards the—into the road and was motioning with the flag and he laid over to about the position, I suppose where he stopped, and he said he laid over the road, you know, and said that Mr. Dunlap had moved on in front of him and he struck him.

"Q. Did Mr. Robinson at any time state to you that Mr. Dunlap jumped in front of his automobile? A. Well, I don't recall him phrasing it that way. He said that as he kept approaching he moved on out, you know, from the edge in front of him and that he couldn't see any reason for him to stop, that his lane appeared clear."

All the evidence shows that defendant's car travelled less than its own length after the plaintiff was struck, so that it must have been going slow. The main theory underlying the defendant's appeal is that he intended to stop, but that the plaintiff suddenly jumped in front of his car without reason and did not give him a chance to stop; and that thereby, the plain-

tiff not only was guilty of contributory negligence, but also assumed the risk of that act as a matter of law. This is brought into focus by assignments of error Nos. 1 and 3, which will be discussed together.

The plaintiff's petition, in part, alleges as follows:

"Plaintiff says that at the time and place aforesaid the defendant was operating a 1936 Ford sedan automobile bearing license Ohio P.2518 for the year 1951, in a northwesterly direction on and over said route No. 37 in a negligent manner and did run his automobile against the plaintiff and knocked him to the pavement and injured him in the manner and to the extent hereinafter set forth.

"Plaintiff further says that the defendant was negligent in the operation of his automobile, which negligence was the direct and proximate cause of the accident and injuries in the following particulars, to-wit:

"1. Defendant failed to maintain a lookout for the plaintiff standing in the highway.

"2. Defendant failed to have his vehicle under control.

"3. Defendant failed to bring his vehicle to a stop as required by the traffic control signal in the hands of the plaintiff.

"4. Defendant failed to operate his vehicle on the right half of the highway."

The answer of the defendant, after making certain admissions, specifically denies that the defendant was driving his motor vehicle "in a negligent manner," and it further interposes a general denial. For a second defense, contributory negligence is pleaded; and for a third defense, assumption of risk is pleaded. The reply is in the nature of a denial.

Section 4511.10, Revised Code, is in part as follows:

"The department of highways may place and maintain traffic control devices, conforming to its manual and specifications, upon all state highways as are necessary to indicate and to carry out Sections 4511.01 to 4511.78, inclusive, and 4511.99 of the Revised Code, or to regulate, warn, or guide traffic."

Section 4511.12, Revised Code, reads in part as follows:

"No pedestrian, driver of a vehicle, or operator of a streetcar or trackless trolley shall disobey the instructions of any traffic control device placed in accordance with Sections 4511.01

to 4511.78, inclusive, and 4511.99 of the Revised Code, unless at the time otherwise directed by a police officer. When both traffic control signals and stop signs are erected at intersections, traffic shall be governed by the traffic control signal while it is in operation.''

At this point it may be well to note that the defendant contends that there is no proof in the record of any negligence on his part, as alleged in the petition. This position is untenable. In the case of *City of Mansfield* v. *Carman,* this writer, in the Appellate Court opinion (unreported), attempted to place a technical construction on certain analogous sections of the Code with reference to stopping at a red light. To make a ''Churchillian'' understatement, this theory was received with disfavor by the Supreme Court (159 Ohio St., 558, 113 N. E. [2d], 7). A stop sign, a red light or a waving red flag mean only one thing, and that is to stop. The word, ''stop,'' as many a driver of a motor vehicle on the highway has been informed by State Highway Patrol officers, does not mean merely slowing up; it means to come to an absolute stop. The defendant is charged with knowing this fact. His excuse in believing that he merely had to carry the flag and not stop is not sufficient in law. It is our judgment that, in not coming to a full stop in response to the flag waved and held by the plaintiff, the defendant was guilty of negligence as a matter of law, and the court should have so charged. But even if this position is wrong, certainly under the third allegation of negligence in the petition there was proof of negligence on the part of the defendant to go to the jury.

The standard of care to be exercised by a person working on the highway is not the same as and requires a lesser degree of precaution than is required of a pedestrian. (61 Corpus Juris Secundum, 69, Section 476.) By a parity of reasoning, an employee of the State Highway Department whose duty it is to stop traffic under the conditions then existing is not to be judged even by the same standard of care as an ordinary workman on the highway. His duties and obligations are entirely different. In such a case he is entrusted with the safety and lives not only of other workmen on the highway but also with the safety of other motor traffic which has the absolute right of way over the highway in the area of construction. It is not going too far to

say that it is his absolute duty, when he has "passed the flag," to stop all traffic until the flag has been returned.

Consequently, it is our judgment that a jury question was presented under the allegations of the petition and the answer of the defendant; and, also, we may here state that we do not think that the conclusion of the jury was against the manifest weight of the evidence. After all, the ultimate question before the jury in this case was whether, under all the circumstances exhibited by the record, the plaintiff acted as an ordinary prudent man would have acted in view of the situation and his duties.

The fourth assignment of error is that the court erred in its charge to the jury. This error is predicated upon a resume of the court after eight pages of charge, in which he stated to the jury as follows:

"It is my suggestion, ladies and gentlemen, that when you retire to the jury room you take up the questions in this case in the following order:

"First: Was the defendant negligent? If you find that the defendant was not negligent as alleged, you need go no further but return a verdict for the defendant.

"Second: If you find that the defendant was negligent you must then proceed further and determine whether or not such negligence was the proximate cause of the damage and injury sustained by the plaintiff. If you find that such negligence was not the proximate cause of such damage and injury, you need go no further but you must return a verdict for the defendant.

"Third: If you find that the defendant was negligent and that such negligence was the proximate cause of the injury sustained by the plaintiff, you will then determine whether or not the plaintiff himself was guilty of contributory negligence as that term has been explained to you. If you find that the plaintiff himself was guilty of contributory negligence you will need go no further but return a verdict for the defendant.

"Now if you find that the plaintiff himself was not guilty of contributory negligence and that the defendant was negligent and that such negligence was the proximate cause of the injuries of which plaintiff complains, then you will take up the question as to the nature and extent of the plaintiff's damages."

Just four paragraphs prior to this instruction the court had stated:

"Referring now to the defense of assumption of risk, I instruct you as a matter of law that a person who brings about a condition or situation obviously dangerous to himself by voluntarily exposing himself to a hazard created by another, assumes the risk of injury so created and thereby relieves such other of legal responsibility for an injury resulting from such exposure.

"In other words, a person who knows, appreciates and then voluntarily exposes himself to a danger, assumes the risk thereof.

"Therefore, if you find from a preponderance of all the evidence in this case that the plaintiff had the last opportunity to avoid the injury of which he complains, and that he knew and appreciated the extent of the risk and voluntarily exposed himself to a hazard created by the defendant, then I say to you that the plaintiff assumed the risk of whatever injury might be sustained as a proximate result of such conduct and under such circumstances plaintiff could not recover."

In addition, the court gave the following special instructions to the jury before argument, at the request of the defendant and over the objection of the plaintiff:

"(Request No. 1.) The court charges you as a matter of law that the plaintiff, in discharging his duty as a flagman, was not required to get into the path of an approaching automobile in order to cause the driver thereof to stop, and if you find from the evidence in this case that the plaintiff, in an effort to stop the defendant, voluntarily stepped into the course or path of defendant's automobile, and as a proximate result of so doing, was struck and injured, the plaintiff cannot recover and your verdict must be for the defendant.

"(Request No. 2.) The court charges you as a matter of law that if you find from all the evidence that the injuries received by the plaintiff were proximately contributed to in any degree by the conduct of the plaintiff himself, he cannot recover in this action even though you find that the defendant was negligent.

"(Request No. 3.) The court charges you that one of the

rules applicable to the case at bar is that when there are two ways of accomplishing a thing which needs to be done, one of which is a safe way and the other an unsafe way, the one who undertakes to perform the same by use of the unsafe way cannot recover if he is thereby injured."

At the end of the charge the trial court asked if either party had any suggestions as to request for further charge. The only answer of the defendant was that he wanted general objections to the charge.

This raises the question as to whether, if there was any error in this charge, it was one of omission or commission. In the first place, we do not think that there was any error in the charge and, if there was, it was an error of omission and not one of commission. The fundamental rule is that the charge must be taken as a whole and unless, taken as such, the jury was misled thereby there was no error committed.

This brings us to a consideration of the defenses in this case of contributory negligence and of assumption of risk, and as to whether the defense of assumption of risk, under the facts herein involved differed in any material respect from the defense of contributory negligence.

As recently observed by a senior member of this court, an opinion is not supposed to be a treatise, and I am not disposed to make this opinion one to be classified in that category. However, the following observations may be pertinent to the issue. Historically, the doctrine of assumed risk was originally confined to relations of master and servant and to contractual relations. However, the doctrine has been extended to apply to tort actions. The area in which it is applied to tort actions is definitely circumscribed. The dividing line between this defense in tort actions and the defense of contributory negligence is hazy and obscure. As is stated in the case of *Edwards* v. *Kirk*, 227 Ia., 684, 288 N. W., 875, quoting from 18 Ruling Case Law, 671:

" 'Few subjects of the law have more obscure and complicated terminology than that appertaining to the doctrine of assumption of risk. Even the most casual investigation discloses a perplexing and often quite unintelligible array of propositions. And commentators usually have concluded that a reconciliation

of all of the statements relating to the subject is an impossible task.' "

We recognize the fact, however, that our Supreme Court, in the case of *Porter, an Infant, v. Toledo Terminal Rd. Co.,* 152 Ohio St., 463, 90 N. E. (2d), 142, has pronounced the proposition that the defenses of contributory negligence and assumption of risk are not synonymous, the former being based on carelessness and the latter on venturousness. However, that pronouncement does not present a criterion as to what state of facts each may be applicable. Consequently, we turn to 4 Restatement of the Law of Torts, 491, Section 893, where we find the following language:

"A person who knows that another has created a danger or is doing a dangerous act or that the land or chattels of another are dangerous, and who nevertheless chooses to enter upon or to remain within or permit his things to remain within the area of risk is not entitled to recover for harm unintentionally caused to him or his things by the other's conduct or by the condition of the premises, *except where the other's conduct constitutes a breach of duty to him or to a third person and has created a situation in which it is reasonably necessary to undergo a risk in order to protect a right or avert a harm.*" (Emphasis ours.)

The entire text following is pertinent to the problem at hand. We choose to quote only two extracts therefrom, at page 491:

"On the other hand, like the defense of consent, it negatives the existence of a breach of duty by the defendant as a legal cause of the harm, thereby differing from the defense of contributory negligence which comes into operation only on the assumption of a prior or concurring violation by the defendant of a duty of care to the plaintiff."

At page 496 it is stated:

"For the same reason one who has been placed in danger, or who sees that a third person has been endangered by the act of another may be able to recover for harm resulting from his effort to avert such danger, despite his full realization of the risk he runs in so doing * * *. In all such cases the risk has not been voluntarily assumed by the plaintiff; it has been thrust upon him. Either the defendant was negligent with respect to

the plaintiff in view of the situation in which the plaintiff had properly placed himself, or the defendant was otherwise tortious in creating a situation in which it was necessary for the plaintiff to take such a risk in order to protect an interest of his own or that of a third person against the consequences of the defendant's conduct.

"If, however, the plaintiff in making his choice, adopts a course of conduct which would not have been adopted by a reasonably prudent man in light of the alternative open to him, he may be barred from recovery. This is a form of contributory negligence which has been frequently called 'voluntary assumption of risk.' This is an application of the phrase made for convenience to indicate a defense based upon the fact that the plaintiff is aware of the risk and chooses to continue. It is, however, distinct from the assumption of risk which, as far as the defendant is concerned, is completely voluntary, as in the situation dealt with in Comment *b*. The fact that the plaintiff is barred only if he is unreasonable in encountering the risk, a fact not considered where there is the true defense of voluntary assumption of risk, indicates it is a form of contributory negligence (see Article 466, Vol. II, Comment *d*). The distinction between the two types of defenses leads to important legal consequences (see Comment *d*)."

Whether the defenses of contributory negligence and assumption of risk, under the factual situation in this case, are separately applicable or overlap, in the words of Judge Taft, "is arguable." In any event, it is our judgment that the ultimate question is whether the plaintiff in this case acted as a reasonably prudent man would have acted under the circumstances. This being so, we have grave doubts as to whether the court should have charged on the defense of assumption of risk. However, when he did, he certainly should have broadened his charge so as to have included the elements which our Supreme Court said were necessary in the *Porter case, supra*. His failure to do so, if it was error, was error against the plaintiff and not the defendant. This case was presented to the jury under a court charge which was absolutely advantageous to the defendant. The defendant so recognized this in his failure to ask for any additional charge. In my own opinion, if the judgment

in this case had been for the defendant and had been appealed to this court upon assignments of error by the plaintiff on such special requests, it would have to be reversed.

We find no prejudicial error in this case as relates to the defendant. Substantial justice was done. The amount of the verdict under the circumstances is not excessive.

Consequently, it follows that the judgment must be and it hereby is affirmed.

*Judgment affirmed.*

MONTGOMERY, P. J., McCLINTOCK, J., concur.