**LIBERTY STORAGE COMPANY, a corporation, Appellant,**

v.

**KANSAS CITY TERMINAL WAREHOUSE COMPANY, Respondent.**

No. 23140.

Kansas City Court of Appeals.

Missouri.

Oct. 3, 1960.

Fred Bellemere, Fred Bellemere, Jr., Kansas City, for appellant.

Guy A. Magruder, Jr., Robert F. Redmond, III, Kansas City, for respondent.

CROSS, Judge.

In this action plaintiff, Liberty Storage Company, sues the defendant Kansas City Terminal Warehouse Company to recover $5,900 for alleged breach of contract. Both parties consenting, trial was by the court without a jury. At the conclusion of plaintiff's evidence, defendant moved for judgment. Sustaining the motion, the court entered judgment dismissing plaintiff's petition with prejudice. Plaintiff appeals.

Plaintiff and defendant are corporations, engaged in the business of public warehouse operation. The subject matter of their contract, now in controversy, relates to a prior transaction between plaintiff and a third party. On January 21, 1949, plaintiff leased certain real estate, a warehouse building, from The Afton Realty Company "for a term of five (5) years beginning January 21, 1949, and ending on the 20th day of January, 1954". The lease further provided, "the lessee shall have the option, upon written notice to the Lessor at least ninety (90) days prior to the end of the term of this lease, to lease these premises for an additional term of five (5) years upon the same terms and conditions and at the same rental specified in this lease."

On September 25, 1950, desiring to discontinue its public warehouse operations, plaintiff entered into a written contract with defendant, containing material provisions, quoted as follows:

"1. First Party shall assign by good and valid assignment, and deliver to Second Party on November 1, 1950, that certain lease dated January 21, 1949, by and between Afton Realty

Company, as Lessor and Liberty Storage Company, as Lessee, covering property commonly known as 1217–23 Union Avenue, Kansas City, Missouri, together with the written consent of Afton Realty Company to such assignment affixed thereto and deliver possession of the premises covered thereby on said date.

"2. Second Party shall pay direct to the First Party an additional rent of One Hundred Dollars ($100.00) per month from November 1, 1950, to the termination date of the present lease."

The lease was assigned in accordance with the contract and with the lessor's consent. Defendant entered into possession of the premises, paid rental to The Afton Realty Company, and paid plaintiff the "additional rent of $100.00 per month", from November 1, 1950, through February, 1954.

On September 1, 1953, defendant exercised the lease option "for an additional term of five (5) years", by giving notice as required and entering into a written agreement with The Afton Realty Company. Defendant made no further payments to plaintiff after February, 1954.

Plaintiff contends that the words "termination date of the present lease" designate the date January 20, 1959, and express the intention of the parties that defendant pay monthly rentals until that date. Defendant insists that the quoted phrase designates January 20, 1954 as the mutually intended termination date of defendant's liability for the rentals.

Neither party suggests that the contract is ambiguous. Our conclusions will come from undisputed facts disclosed by written documents received in evidence.

Plaintiff submits one assignment—that the court committed error by entering a judgment for defendant. The assignment raises only the following question for determination: What date did the parties mean to express by the words "to the termination date of the present lease" as written in their lease assignment contract? If they meant January 20, 1954, plaintiff has established no cause of action and the court properly entered the judgment of dismissal. If they meant January 20, 1959, plaintiff is entitled to recover and has been aggrieved by an erroneous judgment.

■ Plaintiff admits there is only one question for decision, but insists that "it is not a factual question, but rather a legal question—based upon the termination date of the lease". We can not so agree. "The question of interpretation of language and conduct—the question of what is the meaning that should be given by a court to the words of a contract, is a question of fact, not a question of law * * *. There is no 'legal' meaning, separate and distinct from some person's meaning in fact." Vol. 3 Corbin on Contracts, page 119.

Plaintiff cites and relies upon Missouri decisions to the effect that when a lease for a designated term contains an indefeasible option for an additional term, whether by renewal or extension, such lease is a present demise of the optional additional term as well as of the original designated term.

Hence, plaintiff argues, "Applying this interpretation to the lease in the instant case, it would seem that the lease for a five year term with the option to lease for an additional term of five years would be a present demise for the term, as extended, or for ten years, with the right in the tenant to reject the extension if it so desired * * * It would seem, therefore, that under the decisions heretofore cited, the lease in question was a present demise for a ten year term, covering the period from January 21, 1949 to January 20, 1959".

■ The argument avoids the issue of fact before us and is directed to the legal effect of the lease contract between the plaintiff and The Afton Realty Company. That instrument is not in issue. Its pro-

visions are not binding upon defendant unless assumed by contract. The lease is material only as evidence, to be considered with all other testimony in determining the meaning of the assignment contract.

■ Fundamentally, the disputed question will be resolved by determining the intention of the parties as expressed in the language of the contract. "For the purpose of determining the intention of the parties and reaching a construction that is fair and reasonable under all the facts and circumstances, the court may consider the relationship of the parties, the subject matter of the contract, the usages of the business, the surrounding facts and circumstances attending the execution of the contract and its interpretation by the parties". Paisley v. Lucas, 346 Mo. 827, 143 S.W.2d 262, 268.

■ The rules for interpreting contracts are not subtle, but are made for persons of common understanding. Crenshaw v. United States Fidelity & Guaranty Company, Mo.App., 193 S.W.2d 343. The contract in dispute will be considered according to the plain, ordinary and usual meaning of the words and phrases contained in it, as there is nothing in the record to indicate that any word contained in the text of the contract was used in a legal or technical sense. Both parties were warehouse operators—not real estate brokers. No inference arises that any of their officers and employees were familiar with the usages and terminology of the real estate trade or were learned in any branch of the law. "All mercantile contracts ought to be interpreted according to their plain meaning, to men of sense and understanding, and not according to forced and refined interpretations which are intelligible only to lawyers, and scarcely to them." Vol. 12 Am.Jur., Contracts, page 745.

Under the foregoing prescription, we examine the following words of the contract, which alone define the period of defendant's obligation: "2. Second Party shall pay direct to the First Party an additional rent of One Hundred Dollars ($100.00) per month from November 1, 1950 to the termination date of the present lease."

■ Our first duty is to determine and apply to the contract the meaning and effect of the word "present", as used by the parties. We are not at liberty to ignore the presence of the word, but must attach meaning and significance to it, because every part of the contract must be given effect, if fairly and reasonably possible. Myers et al. v. Union Electric Light & Power Co., 334 Mo. 622, 66 S.W.2d 565.

Webster's New International Dictionary, Second Edition, defines the word "present", as "now existing, or in process; begun but not ended, now in view, being dealt with, or under consideration; being at this time; actual; contemporary; not past or future."

We believe that the foregoing lexicon definitions are in accordance with and express the ordinary use and understanding of the word "present", and that the parties understood and used that word in a sense equivalent to the quoted definitions.

■ The phrase "the present lease" was written into the contract for the useful purpose of identifying a certain lease or lease term as distinguished from some other or different one. By "the present lease" the parties meant the one then existing, within their view and being dealt with—not a lease which might (or might not) come into future being. We conclude that "the present lease" contemplated by the parties was the lease "for a term of five years beginning January 21, 1949 and ending on the 20th day of January, 1954", and that they mutually intended that defendant would pay additional monthly rent only to January 20, 1959—not thereafter.

Other factors of language and circumstances supporting our view are found in the record. The general nature of the Afton lease instrument itself, as the subject of agreement, is of material significance. It actually provided for two separately treated and described leases. Number one

was for and limited to *a term of five years,* beginning and ending on specific calendar dates. Lease number two was permitted by option, for *an additional term of five years.* The option permitted a lease for a second term, a successive term, a different term than the original and first term. Confronted with the multiple choice, the parties saw the necessity of, and were justified in, the use of language adequate to point out the lease term they had in mind.

Another circumstance of import is the contract provision that the additional rentals were to be paid "to the termination *date* of the present lease"—not to its *termination.* At the time of the agreement there was only one termination date before the contracting parties. That date was January 20, 1954, as set out in the lease. Although it was evident, from the lease itself, that it might later be renewed as an additional term, yet the parties chose to limit defendant's obligation to the term then in duration. The use of the words "termination date" instead of the broader word "termination" points to their intent to contract with specific reference to the existing five year lease terminating on January 20, 1954.

The parties made their own interpretation of the contract when they performed its obligations. As agreed in paragraph one, they executed a subsequent written assignment document entitled "Assignment of Lease" (Plaintiff's Exhibit No. 4). By the terms of that instrument plaintiff assigned the lease to defendant as described in the contract, but with the significantly added words "To Have and to Hold the same unto said Assignee and its successors and assigns from and after November 1, 1950 for and during the term of said lease and any extensions or renewals thereof,".

With new understanding, we re-examine paragraph 1 of the contract. We read it not merely as an agreement to assign "that certain lease dated January 21, 1949 * * *". We read it in terms of meaning given by the parties who wrote it, and as an agreement to assign "that certain lease * * * for and during the term of said lease and any extension or renewals thereof."

If the parties had intended that defendant pay rentals after January 21, 1949, and during an extension or renewal term, they could have so provided by using appropriate words. They could have used the words "for and during the term of said lease and any extensions or renewals thereof" as they did in the assignment document. They could even have expressed such intention by refraining from using the word "present" in the contract.

Finding no merit in the assignment of error, we conclude that the court properly entered judgment for the defendant.

The judgment is affirmed.

All concur.