MANDO ROSS, appellee, v. RAY E. MILLER, appellant.

No. 50863.

(Reported in 121 N.W.2d 124)

April 9, 1963.

Dwight G. Rider, of Fort Dodge, for appellant.

Arthur J. Crawford, of Fort Dodge, for appellee.

SNELL, J.—This is an action at law by a real-estate broker for the collection of a commission on the sale of real estate. The case was tried to the court without a jury. The trial court rendered judgment for one half of plaintiff's claim and defendant appeals.

Plaintiff, a real-estate broker in Fort Dodge, and defendant, the owner of several real properties, were not strangers. Plain-

1366

tiff had previously sold property for defendant. Because of his wife's infirmities defendant wanted to escape the rigors of Iowa winters. Defendant listed his home for sale with plaintiff. There is no claim that it was an exclusive listing under which plaintiff would be entitled to a commission regardless of who sold the house. By advertisement and the usual efforts of a real-estate broker plaintiff attempted sale but without success.

In the fall of 1959 Mr. Willard Musick contacted defendant about buying the house. The Musicks went through the house two or three times with defendant and were interested in its purchase but were without adequate funds or available financing. Negotiations between defendant and Mr. Musick continued and resulted in a tentative but wholly unproductive agreement.

On Sunday, August 14, 1960, defendant called plaintiff by phone and asked him to come to his place at once and bring his offer to purchase pads. Plaintiff responded promptly. Plaintiff claims that he had previously contacted Mr. Musick and had made the appointment for 1:30 Sunday afternoon. This is emphatically denied by Mr. Musick who testified, "the first time I ever set eyes on Mr. Ross was that Sunday in the patio at the Miller residence when Mr. Miller introduced me to him. * * * I never had an appointment with Mr. Ross for 1:30 that afternoon." Plaintiff himself admitted that he did not at any time show the house to Mr. Musick. Plaintiff also testified, "I did not know Mr. Musick before I met him at the Miller home that Sunday afternoon except to know him when I saw him and I knew that he was associated with the Boat Company, but I did not know him personally."

There is some variation but no great conflict in the evidence as to what happened when plaintiff arrived at defendant's home. Defendant says he had called plaintiff and told him Mr. Musick was there and had made an offer. Defendant testified he said to plaintiff, "What do you want to close, and come on out."

We quote from defendant's testimony: "When he came to the door, I said, 'What do you want for closing this deal?' I felt like he should have something. He hadn't talked to the man as far as I know, but I said 'you recognize that he is not your man.' Mr. Ross said, 'yes, I recognize that.' He really

wanted $1200.00, but I said 'he is not your man.' He said 'give me half,' so he agreed to draw up the contract for half. I did it for him as a favor. Then when he couldn't get the loan and the deal was out, I didn't see anymore of Mr. Ross * * *."

This conversation is not denied by plaintiff. Plaintiff merely testified, "I drove into the driveway and Mr. Miller met me at the car. Before I got out of the car he said 'I don't want you to say anything. Just write down what I tell you to.'"

The men went into the house. With figures furnished by defendant, plaintiff prepared an offer to purchase, signed by Mr. Musick and accepted by defendant. The handwritten offer prepared on Sunday was rewritten on a typewriter the next day.

This offer to purchase, or contract, provided in substance for a sale price of $20,000. Mr. Musick had no money but he owned stock in a local company manufacturing boats. The market for the boat company stock was not favorable, but Mr. Musick was optimistic. The offer to purchase provided for the execution of a note for $7000 and the placing in escrow of enough stock to pay the note and the payment of $13,000 on or before September 9, 1960. The note was never executed and the escrow never completed.

The efforts of Mr. Musick to get financing and the efforts of plaintiff to find financial help for Mr. Musick failed completely. Nothing was ever paid, the sale was not completed and the whole proposition was abandoned.

Some time later defendant contacted Mr. Musick again trying to revive interest in the purchase by Mr. Musick. On September 10, 1960, a new offer or contract was agreed to under which Mr. Musick would pay $500 down and defendant would carry the balance on a long-term contract calling for payment of $125 per month until 1971 and a payment of $6000 on June 30, 1961. Again Mr. Musick's optimism was greater than his resources. He has paid $200 on the $500 and a few of the $125 monthly payments but nothing else. Defendant paid all the taxes. This agreement to purchase also collapsed and Mr. Musick so advised defendant. No sale has ever been completed.

I. Plaintiff brought this action for the full six per cent

commission of $1200 on the original sale price of $20,000 alleging that as a result of plaintiff's activities defendant made a sale to Mr. Musick.

Throughout the trial plaintiff stood on his original claim to $1200. His claim was on an alleged contract. There was no claim on quantum meruit, no evidence of the reasonable value of services actually rendered and no attempt to amend to conform to proof.

The trial court found that "plaintiff and defendant entered into an agreement wherein plaintiff was to receive one half of the regular commission on the sale of the property to the said Musick." The court then found that sale was made on or about the 15th of August, 1960, and found for plaintiff in the sum of $600. There is evidence in the record to support a finding that defendant promised to pay plaintiff one-half commission to close the "deal." There is no evidence to support a finding that the "deal" was ever closed or a sale ever consummated.

█ Findings of fact in a law action are binding upon the appellate court if supported by substantial evidence. Rule 344(f)1, R. C. P. When there is no substantial evidence, however, a verdict cannot stand.

█ II. The trial court properly held that it is the settled rule in Iowa that when a real-estate broker brings together a buyer willing and able to purchase, and a seller willing and able to sell, he has earned his commission. Extensive citation of authority in support of this rule is unnecessary but see Kellogg v. Rhodes, 231 Iowa 1340, 1343, 4 N.W.2d 412.

█ For two obvious reasons plaintiff could not prevail under this rule. Plaintiff did not bring the seller and prospective buyer together. He never did show the house to Mr. Musick and never knew him until defendant introduced them at defendant's house.

An equal or even more cogent reason is the fact that the prospective buyer was not and has not been able to buy. He had no money. He had no resources from which to obtain money. He could not buy even under the most lenient of terms. There can be no valid claim to a commission based on the willingness of a prospect unable to buy.

III. Although plaintiff made no claim to an agreement for one half the regular commission defendant admitted that he agreed to pay half the commission if plaintiff sold the house. At another place he quoted his question to plaintiff, "What do you want to close" and plaintiff's suggestion "give me half." The trial court found that a sale was made and that plaintiff was entitled to $600 under the agreement.

There is no evidence in the record to support a finding that there was a sale or that any "deal" was ever completed.

Plaintiff's efforts to find financing for Mr. Musick were unproductive. All plaintiff did for defendant was to act as scrivener in completing a printed form with figures furnished by defendant. That did not constitute selling the house or closing the "deal." There never was a completed sale or a final closing.

This is not a case where the seller refused to perform. Refusal of a seller to perform does not relieve him from liability to pay a commission. Raymond v. Stinson, 196 Iowa 881, 882, 195 N.W. 588. The failure was due to the buyer's inability. When the deal failed so did the only premise upon which plaintiff could recover.

Defendant's subsequent efforts to sell to Mr. Musick did not entitle plaintiff to a commission. In Kellogg v. Rhodes, supra, on page 1344 of Iowa Reports it is said:

"It is also well settled that if negotiations between parties brought together by a broker are unproductive, and the parties in good faith withdraw therefrom and abandon the proposed sale, a subsequent renewal of negotiations followed by a sale by the principal at a lower price does not entitle the broker to a commission, since it cannot be said that he was the procuring cause of the sale." (Citations)

The second effort to sell also failed and was abandoned because of Mr. Musick's lack of money.

IV. The trial court's findings and judgment are based on a premise neither pleaded nor claimed by plaintiff. Plaintiff sued on an alleged contract and claimed performance thereunder. The court found an entirely different contract and

rendered judgment thereunder. There was a substantial variance between the claim and the judgment.

Rule 106, R. C. P., provides:

"No variance between pleading and proof shall be deemed material unless it is shown to have misled the opposite party to his prejudice in maintaining his cause of action or defense. *But where an allegation or defense is unproved in its general meaning, this shall not be held a mere variance but a failure of proof.*" (Emphasis supplied.)

Here we do not have a mere variance. Plaintiff's claim failed for lack of proof. The case was not tried on the theory that plaintiff might be entitled to one half the regular commission. He stood on the record as made. There was no attempt to amend to conform to the proof.

"We have repeatedly held a party cannot plead one contract and recover on another." Snater v. Walters, 250 Iowa 1189, 1193, 98 N.W.2d 302, 305.

Viewed in the light most favorable to plaintiff there is no evidence in this case sufficient to support a verdict and judgment for plaintiff.

The case is reversed and remanded with instructions to enter judgment for defendant.—Reversed and remanded.

All JUSTICES concur.