**DUBINSKY REALTY, INC., Respondent,**

v.

**VACTEC, INC., Appellants.**

**No. 44761.**

Missouri Court of Appeals,
Eastern District,
Division Three.

June 1, 1982.

Motion for Rehearing and/or Transfer
Denied July 16, 1982.

David T. Weir, Gerald A. Rimmel, St. Louis, for appellants.

Norman Bierman, Michael R. Swafford, St. Louis, for respondent.

SNYDER, Judge.

Vactec, Inc., a Missouri corporation, (Vactec) appeals from a summary judgment entered in favor of plaintiff, Dubinsky Realty Company (Dubinsky), in its suit for a realtors' commission on a lease which has been assigned to Vactec. The judgment is affirmed.

In December, 1975, respondent Dubinsky negotiated a five year commercial lease between Joseph S. Wohl as owner-lessor and Cartec, Inc. (Cartec) as lessee. Paragraph 6 of the "additional provisions" of the lease provided:

> 6. Lessor recognizes Dubinsky Realty Company as its real estate agent in connection with this lease and agrees to pay said agent a commission of 5% of the total gross amount of rental value under this lease, extentions [sic] or renewals of this lease. Said commission shall be due and payable at the beginning of the lease term or commencement of any renewal of said lease whether or not said extention [sic] or renewal is made exactly on the same terms of this lease. Said agent is to be also paid 5% commission on any rental which may accrue under this lease due to any increase due to the result of application of the Consumer Price Index schedule as provided in this lease.

In 1978, Wohl sold the premises and assigned the 1975 lease to Vactec. Vactec and Cartec entered into a second lease on January 1, 1981, upon expiration of the assigned lease. The new lease contained no provision for a realtor's commission. The 1981 lease differed from the 1975 lease in two substantive respects. The rent was increased and a 10 foot wide strip added to the leased parcel for parking purposes. There were other minor changes. It is the commissions on the rentals in the second lease which are in dispute.

Both parties filed motions for summary judgments and supporting affidavits. Dubinsky also filed exhibits and the depositions of Monroe Levy and Manuel Goldberg, president and treasurer, respectively, of Vactec. The trial court granted Dubinsky's motion for summary judgment and denied Vactec's. Vactec appealed.

Vactec asserts there were genuine issues of material fact to be resolved relating to the meaning of paragraph 6 of the 1975 lease and that Missouri law precludes construction of the 1981 lease as a renewal or extension of the original lease. This court finds the 1981 lease was a renewal of the 1975 lease and affirms the summary judgment in favor of Dubinsky.

This court's duty, in determining the propriety of the trial court's ruling, is to review the record in a light most favorable to Vactec as the party against whom the summary judgment was rendered. Rule 74.-04(c, h); *Edwards v. Heidelbaugh*, 574 S.W.2d 25, 27 (Mo.App.1978).

If the record in this case discloses no material fact issues, and the law applicable to the case precludes a finding for Vactec, then summary judgment for Dubinsky was proper. *See, Pine Lawn Bank and Trust Co. v. Schnebelen*, 579 S.W.2d 640, 643 (Mo. App.1979).

The court is further guided by the principal that summary judgment is appropriate in a contract case when the meaning of the portion of the contract in issue is so apparent that it may be determined from the four corners of the document. *Renois v. DiFranco*, 512 S.W.2d 411, 413 (Mo.App. 1974).

There is no contest regarding the facts in this case. Both parties concede that Wohl agreed to pay Dubinsky commissions on rentals received under the 1975 lease and that Vactec, Wohl's assignee, expressly assumed both the benefits and the obligations of the agreement. It is therefore bound by the language of the agreement and its legal consequences. 6 Am.Jur. 2d *Assignments,* § 109 (1963).

The parties further agree that in 1981, upon the expiration of the 1975 lease, Vactec and Wohl's lessee, Cartec, executed another lease similar to the 1975 lease. The sole issue is whether the 1981 lease is an extension or renewal of the 1975 lease. If it is, Dubinsky is entitled, as a matter of law, to commissions during the term of the 1981 lease as provided for in the 1975 lease.

Renewals and extensions of leases are legally distinct although the line of demarcation is generally ignored by Missouri courts. *State ex rel. State Highway Commission v. Demarco*, 445 S.W.2d 379, 385 (Mo.App.1969); *See, Krall v. Light*, 240 Mo.App. 480, 210 S.W.2d 739, 746 (1948); *Bussen v. Del Commune*, 239 Mo.App. 859, 199 S.W.2d 13, 22 (1947). The technical distinction between the two is that an extension generally does not require a new grant and may occur in situations where the tenant remains in possession subsequent to the expiration of the lease term and continues to pay rent which the landlord accepts. A renewal, on the other hand, implies a new grant for an additional term and generally requires the execution of a new document to be effective. *Bussen v. Del Commune, supra* 199 S.W.2d at 22. *See,* R. Schoshinski, American Law of Landlord and Tenant § 9:1 (1980); 1 American Law of Property § 3.85 (1952).

Under these principles the 1981 lease was not an extension of the 1975 lease but rather either a renewal of that lease or an entirely new and independent grant. An examination and analysis of the entire record leads to the conclusion that the 1981 lease was indeed a renewal.

Although the renewal of a lease is usually for a similar period and on similar terms and conditions, the fact the new grant is for a different time period or calls for higher rent and an extension of the premises, as in the instant case, will not prevent it from being considered a renewal. *See, Wm. P. Zinn & Co. v. Shawnee Pottery Co.*, 148 F.Supp. 322, 325 (E.D.Ohio, 1955); 1 American Law of Property § 3.85 (1952). This is particularly so where, as here, the parties to the original lease expressly con-

templated renewal on terms different from those contained in the original lease.

The 1975 lease states that Dubinsky Realty is entitled to commissions under that lease or "extensions or renewals" thereof whether or not the extension or renewal is made on exactly the same terms. This language is clear and unambiguous and evidences the intent of Wohl that as long as the landlord tenant relationship remained in existence between Wohl and Cartec, regardless of changes in the terms governing that relationship, Dubinsky was entitled to commissions on rent paid by Cartec to Wohl. The provision for renewal or extension on different terms indicates that the parties contemplated changes at the end of the term.

Vactec argues the 1981 lease cannot be considered a renewal of the 1975 lease because "significant and numerous dissimilarities" exist between the two leases. An examination and comparison of the leases reveals various changes in language. However, the only changes of any substance are the provisions which increased the rental payments and the area leased to Cartec, Inc.

There is no evidence of a substantial change in the landlord tenant relationship between Vactec and Cartec or that the business was not to continue on the premises as in the past.

This case may be compared profitably with *Liberty Storage Co. v. Kansas City Terminal Warehouse Co.*, 340 S.W.2d 189, 191–192 (Mo.App.1960). In that case Liberty Storage Co. (Liberty) leased a warehouse from Afton Realty for a term of five years commencing January 21, 1949 and ending January 20, 1954. In 1950, Liberty assigned the lease to Kansas City Terminal Warehouse Co. (Terminal). The assignment called for payments by Terminal to Liberty of $100 per month (over and above the rent paid by Terminal to Afton Realty) until the

"termination date of this lease." In 1954, the lease was renewed or extended by Terminal; however, they ceased making payments to Liberty.

In affirming the trial court's judgment in favor of defendant, Terminal, the appellate court stated that if the parties had intended Terminal to pay the monthly fee to Liberty "during a renewal or extension term, they could have so provided by using appropriate words. They could have used the words 'for and during the term of said lease and any extensions or renewals thereof' ..." *Id.* at 193. The parties in the instant case did include such language in their provision for payment of fees to Dubinsky.

There were additional facts in the record to support the trial court's judgment. Monroe Levy, president of Vactec, acknowledged the assignment of the lease and that Vactec accepted not only the benefits but also "took over" the obligations. If Wohl had continued as lessor he would have been liable for the commissions on the 1981 lease; Vactec stands in the shoes of its assignor. Manuel Goldberg, treasurer of Vactec, told a Dubinsky associate that Vactec would consider giving Dubinsky a listing on another parcel of real estate if Dubinsky would waive its rights to the commissions set out in the Wohl-Cartec lease, an indication that Vactec recognized its obligation to continue paying the commission specified in the assigned lease. Vactec admitted that it owed Dubinsky additional commissions under the terms of the assigned lease based on rent increases resulting from increases in the consumer price index.[1]

In support of its argument that the 1981 lease is a new agreement, independent of the 1975 lease, Vactec asserts the 1981 lease could not be a renewal or extension of the 1975 lease because there was no option for renewal or extension contained in that lease.[2] Vactec is correct in its assertion

---

1. Dubinsky sought to recover commissions on cost of living increases owed it under the 1975 lease in Count I of its petition. The trial court also entered a summary judgment in plaintiff's favor on this count from which Vactec has not appealed.

2. In its brief, Vactec engages in an extensive discussion of the enforceability of options for renewals or extensions of leases. There is no such option involved in this case. Therefore, Vactec's discussion regarding their enforceability is generally irrelevant.

that no option to renew or extend the leasehold appears in the 1975 lease agreement. Vactec cites no authority, however, for the proposition that there can be no renewal or extension of a lease in the absence of an express provision in the document. Indeed, it would be an unreasonable notion that parties to a contract could not, subsequently or prior to its expiration, agree to renew or continue it even though the original agreement did not contain an option for renewal or extension. It is basic that parties may agree to do anything which does not contravene the law or public policy. *Tobin v. Insurance Agency Co.*, 80 F.2d 241, 243 (8th Cir. 1936); *See, King v. Moorehead*, 495 S.W.2d 65, 77 (Mo.App.1973).

Although the 1975 lease contained no option for renewal or extension by either party, the parties contemplated the possibility of such an agreement in the future, for paragraph six of the lease, supra, provided for the continued payment of the realtor's commission to plaintiff in the event the parties chose to extend or renew the lease.

The parties chose to renew the lease. There was no genuine issue of material fact to be resolved. The intent of the parties could be gleaned from the record before the trial court. Appellant Vactec is therefore liable for the disputed commission.

The judgment is affirmed.

REINHARD, P. J., and CRIST, J., concur.