596 So.2d 1114 (1992)
WOODARD TIRE COMPANY, INC., and Allen D. Woodard, Appellants,
v.
HARTLEY REALTY INCORPORATED, and Tequesta Properties, Inc., Appellees.
No. 91-2151.
District Court of Appeal of Florida, Third District.
March 10, 1992.
Rehearing Denied May 12, 1992.
*1115 John L. Avery, Jr., Jupiter, for appellants.
Ferdie & Gouz, and Ainslee R. Ferdie, Miami, for appellees.
Before NESBITT, FERGUSON and COPE, JJ.
PER CURIAM.
Appellants Woodard Tire Company, Inc., a dissolved corporation, and Allen Woodard, former owner and director of Woodard Tire, appeal a final judgment finding that they are liable for brokerage commissions for the lease of a building previously owned by the corporation. We reverse.
Woodard Tire operated a tire business in a building which it owned. In 1983 Woodard Tire leased the building to Norton Tire Co., which began operations in that location. Woodard Tire sold its inventory and equipment to Norton. The lease was for an initial five-year period, with an option to renew for seven additional five-year terms.
Two brokers, appellees Hartley Realty and Tequesta Properties ("Brokers"), performed services in the transaction. They were paid a commission for the initial five-year lease, and a commission for the sale of Woodard Tire's inventory and equipment.
The principal document memorializing the agreement between Woodard Tire and Norton was a Sale of Business Assets Agreement ("Assets Agreement"). The lease for the business premises was attached as an exhibit to the Assets Agreement.
The present controversy arises from Paragraph 9 of the Assets Agreement, entitled "Brokerage," to which the Brokers, Woodard Tire, and Norton were signatories. Under one provision of Paragraph 9, the Brokers would be entitled to a future commission from Woodard Tire if, at the end of the first five years, "the lessee exercises the first option to renew [the lease]... ." Assets Agreement, Para. 9.
The lease term began in 1983. In 1985 Woodard Tire sold the building and assigned the Lease to Philip Gilden, as Trustee. Gilden thus became the new landlord. However, the lease was completely silent on the issue of brokerage commissions, so when Gilden became the assignee of the lease, he undertook no obligation with respect to the Brokers' commissions. The brokerage agreement was part of the Assets Agreement  which was not assigned to Gilden. Woodard Tire therefore continued to have liability for brokerage commissions under Paragraph 9 of the Assets Agreement. Meanwhile, Woodard Tire was dissolved without making any provision for the contingent claims for additional brokerage commissions. Allen Woodard was the final director and distributee of *1116 Woodard Tire's assets.[1]
In 1986 Norton was acquired by Goodyear Tire and Rubber Company. The tenant's interest in the lease was assigned to Goodyear.
In 1988, at the end of the first five-year rental period, Gilden and Goodyear negotiated a five-year lease extension. Gilden and Goodyear characterized this as an exercise of the first five-year option to renew the lease. However, Gilden and Goodyear also simultaneously agreed to amend the lease to change the rental amount.
The Brokers sued for a commission, alleging that the new lease was in fact a renewal of the existing lease. They contended that pursuant to the Assets Agreement, they were entitled to receive a commission. After bench trial, the court entered judgment against Woodard Tire and Woodard individually. They have appealed.
At issue here is the question of what constitutes a "renewal" of this lease so that the Brokers would be entitled to earn a commission.[2] The documents relevant to this analysis are the Assets Agreement and the lease. Under the Assets Agreement, the Brokers were entitled to a commission, inter alia, "[i]f the lessee exercises the first option to renew... ." Id. Para. 9. The Brokerage clause of the Assets Agreement refers to the lease, which is attached as an exhibit. Under the lease, the "option to renew" is a specifically defined term. Lease, § 35. Each renewal is for a five-year term "on the same terms, covenants and conditions as provided in this Lease... ." However, the rental price for each renewal term will be determined by a formula based on the consumer price index. Here, the parties did not follow the price contained in the lease but renegotiated the rent and amended the agreement to substitute the new rental rate.
It is a generally accepted rule of contract law that where a writing expressly refers to and sufficiently describes another document, that other document is to be interpreted as part of the writing. OBS Co. v. Pace Constr. Corp., 558 So.2d 404 (Fla. 1990). The terms of these two provisions are unambiguous. The construction of the terms of an unambiguous contract is a question of law for the court. Peacock Constr. Co. v. Modern Air Conditioning, Inc., 353 So.2d 840 (Fla. 1977); Cushman & Wakefield of Florida, Inc. v. Williams, 551 So.2d 1251, 1254 (Fla.2d DCA 1989).
A lease renewal involves a continuation of the landlord-tenant relationship on the terms specified in the option to renew, or if no terms are specified, then "[a] lease renewal connotes a continuation of the landlord-tenant relationship on the same terms as the original lease." Strano v. Reisinger Real Estate, Inc., 534 So.2d 1214, 1215 (Fla. 3d DCA 1988), review dismissed, 542 So.2d 1334 (Fla. 1989). In this case, the renewal terms were set forth in the Option to Renew clause of the original lease. Because the rent was renegotiated, this did not constitute a renewal as that term had been defined in the lease and Paragraph 9 of the Sale of Business Assets Agreement. See Cushman & Wakefield of Florida, Inc. v. Williams, 551 So.2d at 1254; Strano v. Reisinger Real Estate, Inc., 534 So.2d at 1215; Plumbing Industry Program, Inc. v. M.N. Good, 120 So.2d 639, 641 (Fla.3d DCA 1960). Since there was no renewal as contractually defined, no commission was earned.
The final judgment is reversed and the cause remanded with directions to enter judgment for appellants.
Reversed and remanded.
NOTES
[1] Mortgage payments owed to Woodard Tire continue to be received by Allen Woodard as successor in interest.
[2] Under Florida law, no distinction is drawn between a "renewal" and an "extension" of a lease. Sisco v. Rotenberg, 104 So.2d 365, 370 (Fla. 1958); Leibowitz v. Christo, 75 So.2d 692, 693 (Fla. 1954) (the "distinction between the meaning of words renewal and extension was `too refined and theoretical to be real, as a matter of law, in practical affairs.'") (citation omitted); Strano v. Reisinger Real Estate, Inc., 534 So.2d 1214, 1215 n. 2 (Fla.3d DCA 1988), review dismissed, 542 So.2d 1334 (Fla. 1989).