**AMERUS PROPERTY BROKERS**
d/b/a Iowa Realty Commercial
Brokers, Appellee,

v.

**Robert V. HICKLIN, Sr., Individually and as Managing General Partner for Big "H" Realty Partnership; Robert V. Hicklin, Jr., Gregory A. Hicklin; Judith A. Hicklin, Frances E. Hicklin, Individually and as Partners of Big "H" Realty Partnership, Appellants.**

No. 97–326.

Supreme Court of Iowa.

Oct. 21, 1998.

Randy Duncan, Miriam S. Sawtelle, and R. Mathieson Duncan of Duncan, Green, Brown, Langeness & Eckley, P.C., Des Moines, for appellants.

Jeffrey L. Goodman of Shearer, Templer & Pingel, P.C., West Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and TERNUS, JJ.

NEUMAN, Justice.

This case involves a real estate brokerage firm's attempt to recover a commission on the renewal of a commercial lease between two parties originally brought together by the broker. The question is whether the second lease is a "negotiated renewal" qualifying for a commission under the parties' listing agreement, or a totally "new" lease beyond the parties' agreement. Ruling on the parties' cross-motions for summary judgment, the district court entered judgment for the broker. Because we believe the court correctly applied the contract's "negotiated renewal" provision, we affirm.

## I. Background Facts and Proceedings.

In May 1994, defendant Big "H" Realty Partnership sought a tenant for an industrial warehouse it owns in Ankeny, Iowa. Big "H" agreed to list the property with plaintiff Amerus Property Brokers d/b/a Iowa Realty Commercial Brokers (Amerus). The parties listing agreement provided, in pertinent part, that in the event a lease were secured, Big "H" would pay Amerus

a five percent (5%) commission on the gross lease (including *negotiated renewals,* exercised options or extensions by the Tenant) or one months rent—whichever is greater, payable when the Lease is executed.

(Emphasis added.) The contract term negotiated renewals is at the heart of this controversy.

By July 1994, Amerus located a tenant, Dee Zee, a company needing warehouse space to distribute its products. Dee Zee and Big "H" executed a seventeen-month lease containing an option to renew for one three-year period. The lease called for monthly payments of $22,359.17. If the tenant exercised its renewal option, the rental would be "adjusted annually to reflect changes in the Consumer Price Index ("C.P.I.") number." General maintenance of the building fell to Dee Zee; improvements and repairs were the responsibility of Big

"H." In accordance with the listing agreement, Big "H" duly paid Amerus its brokerage commission upon execution of the lease.

While occupying the property, Dee Zee became dissatisfied with certain physical characteristics of the building. The building's drawbacks weighed heavily in its decision whether to stay at the Ankeny location or relocate. It commenced negotiations with Big "H" concerning a subsequent lease term. Dee Zee requested additional dock doors and repairs to the dock "levelall" system, installation of a fire sprinkler, heaters, driveway improvements, and roof repairs. Dee Zee also insisted it would not agree to a C.P.I. escalation clause on any renewal of the lease.

Dee Zee and Big "H" eventually agreed to a three-year lease to commence upon the expiration of the original seventeen-month term. The second lease called for a monthly rent of $20,868.56. The monthly reduction from the original lease, when amortized over the life of the lease, totaled $53,662. In turn, Dee Zee agreed to spend at least $53,662 for improvements to the premises, including the installation of additional dock doors, a ventilation system, and essential roof repairs. The second lease contained no C.P.I. escalator clause.

When Amerus learned about Dee Zee's continued tenancy, it billed Big "H" for its five percent commission. Big "H" refused to pay, insisting the second lease was a "new" lease, not a "negotiated renewal, exercised option or extension" covered by its listing agreement with Amerus.

Amerus filed suit to compel payment of the commission. The parties eventually filed cross-motions for summary judgment. The district court found the material facts were undisputed. The parties, property, and rental cost remained the same, with no interruption in the tenant's occupation of the premises. Variations between the two leases, the court concluded, were insubstantial and resulted from the negotiation process contemplated by the "negotiated renewal" clause. It entered judgment for Amerus based on a commission due on the second lease of $37,-563.41. This appeal by Big "H" followed.

## II. Issue on Appeal/Scope of Review.

Big "H" frames the issue on appeal this way: The district court erred in holding that the 1996 lease between Big "H" and Dee Zee is a negotiated renewal. Both parties agree that the material facts bearing on the question are undisputed. Because the conflict concerns only the legal consequences flowing from undisputed facts, resolution by way of summary judgment is proper. *Farm Bureau Mut. Ins. Co. v. Milne*, 424 N.W.2d 422, 422–23 (Iowa 1988). Our review is for the correction of errors at law. *Hayward v. P.D.A., Inc.*, 573 N.W.2d 29, 31 (Iowa 1997).

## III. Analysis.

The parties do not seriously dispute the meaning of the term "negotiated renewal" found in their listing agreement. They merely contest the legal effect of a contract containing such a term. Thus we view the case as one involving *construction* of the parties' contract, not *interpretation* of contractual words used. *See LeMars Mut. Ins. Co. v. Joffer*, 574 N.W.2d 303, 306 (Iowa 1998) ("interpretation" requires court to determine meaning of contractual words; "construction" requires court to determine contract's legal effect). We are guided by the "cardinal principle" that the parties' intent controls, "and except in cases of ambiguity, this is determined by what the contract itself says." Iowa R.App. P. 14(f)(14).

Big "H" concedes at the outset that a "renewal" of its original lease with Dee Zee would result in a commission payable to Amerus. It also concedes, as it must, that it negotiated at great length with Dee Zee. Yet Big "H" contends its 1996 lease with Dee Zee is not a "negotiated renewal," as that term is used in the listing agreement, because (1) the original lease left no room for negotiation, and (2) the original lease terms were rejected by Dee Zee and ultimately abandoned in favor of an entirely "new" lease.

Big "H" supports its argument with a line of cases standing for the proposition that a lease "renewal" occurs only when the terms of the second lease are the same as the original lease. *See, e.g., Strano v. Reisinger Real Estate, Inc.*, 534 So.2d 1214, 1215 (Fla. Dist.Ct.App.1988) ("A lease renewal connotes

a continuation of the landlord-tenant relationship on the same terms as the original lease." ); *accord Woodard Tire Co. v. Hartley Realty, Inc.,* 596 So.2d 1114, 1116 (Fla. Dist.Ct.App.1992). The "rule" announced in these cases, however, merely echoes the contractual language by which the parties were bound. Thus in *Woodard,* for example, the brokerage clause referred to a lease which defined "option to renew" as being "on the *same* terms, covenants and conditions as provided in this Lease." *Woodard,* 596 So.2d at 1116 (emphasis added). Similarly, in another case relied upon by Big "H," the commission agreement provided that the broker "shall not be entitled to commissions on renewals, extensions or leases of additional space *that are not pursuant to options or rights contained in the original lease. . . ."* *Cushman & Wakefield v. Williams,* 551 So.2d 1251, 1252 (Fla.Dist.Ct.App.1989) (emphasis added).

Amerus relies on a different line of cases which tend to take a more relaxed view of what constitutes a renewal. In *Dubinsky Realty, Inc. v. Vactec, Inc.,* 637 S.W.2d 190, 191 (Mo.Ct.App.1982), for example, the court construed a listing agreement making a commission payable on renewal of the lease "whether or not said . . . renewal is made exactly on the same terms of this lease." As in the case before us, the landlord resisted paying an additional commission, arguing "significant and numerous dissimilarities" existed between the two leases. *Dubinsky,* 637 S.W.2d at 193. The court held the parties' agreement contemplated changes at the end of the term and, in the absence of "a substantial change in the landlord tenant relationship," the agreed-upon commission was due. Id. In reaching its decision, the court reasoned:

> Although the renewal of a lease is usually for a similar period and on similar terms and conditions, the fact the new grant is for a different time period or calls for higher rent and an extension of the premises, as in the instant case, will not prevent it from being considered a renewal. This is particularly so where, as here, the parties to the original lease expressly contemplated renewal on terms different from those contained in the original lease.

*Id.* at 192–93 (citations omitted). In a factually comparable case, the Georgia Court of Appeals recently took the same approach:

> [I]n deciding whether a succeeding lease is substantially a renewal of a preceding lease or altogether a new lease, the determination can be based on whether the succeeding lease employs drastically different terms, not simply somewhat different considerations, i.e., is the lessee occupying substantially the same space under substantially the same terms? If the succeeding lease employs substantially the same terms as the preceding lease, it may be considered a renewal even though technically a "new" lease.

*Westminster Group, Inc. v. Perimeter 400 Partners,* 218 Ga.App. 293, 460 S.E.2d 827, 830–31 (1995) (quoting *Board of Regents v. A.B. & E.,* 182 Ga.App. 671, 357 S.E.2d 100, 102 (1987)).

We are able to draw only limited assistance from these decisions. The brokerage contract before us must be construed in accordance with its own unique terms. Clearly the lease between Big "H" and Dee Zee did not contemplate renewal on the *same* terms as the original lease. Nor was the lease entirely open-ended insofar as renewal was concerned. The lease specifically provided a renewal option with a new rental rate pegged to changes in the C.P.I. Thus the question boils down to whether Amerus can rightfully insist on a renewal commission when the leasing parties opt to continue their landlord-tenant relationship other than in accordance with the original lease.

■■■ We begin by noting this court has long been committed to the general rule that a brokerage firm is entitled to a commission if it produces a buyer willing and able to purchase property upon the terms specified in the listing agreement, or upon terms which the sellers are willing to accept. *Iowa Sec. Co. v. Schaefer,* 256 Iowa 219, 224, 126 N.W.2d 922, 925 (1964); Ross v. Miller, 254 Iowa 1364, 1368, 121 N.W.2d 124, 126 (1963). When the broker's work culminates in a lease, rather than a sale, the value of the broker's services logically extends over the life of the lease and should be compensated

accordingly. Thus other courts have recognized that brokers may be entitled to commissions even "where options [to renew] were not exercised under the precise terms of the lease agreement." *Louis Ross Assocs. v. Interstate Holding Corp.*, 249 N.J.Super. 436, 592 A.2d 622, 623 (1991). "To hold otherwise," the New Jersey appellate court has held,

> would lay open the way for real estate owners to deprive brokers or agents of their commission simply by entering into a new contract with the buyer or lessee cancelling the contract resulting from the services or efforts of the agent, and entering into a contract of sale or lease for a different price or commission.

*Id.* (quoting *Consolidated Realty Co. v. Graves*, 291 Ky. 456, 165 S.W.2d 26, 30 (1942)).

Here, the district court found that the parties' listing agreement accommodated the likelihood that the leasing parties would "negotiate" renewal terms differing from those contemplated in the original lease, and the listing agreement protected the broker's commission rights accordingly. The court reasoned:

> One can infer from the use of the phrase "negotiated renewal" that the parties intended that a condition precedent for future payment of a broker's fee is that the parties, after negotiating the renewal terms, agree to continue the lease agreement. The adjectival use of the word "negotiated" in conjunction with the word "renewal" connotes that the event of renewal would be preceded by a process in which the parties exchanged demands for changes favorable to themselves in the terms of the original agreement.

We believe the district court correctly construed the parties' contract. There can be no serious dispute that the essentials of the lease agreement in the original and subsequent leases between Big "H" and Dee Zee were the same: same parties, same property, and substantially the same rent. The reduction in the square footage rental price in the subsequent lease is directly proportional to the amount Dee Zee agreed to spend on maintenance and improvements. The stipulated record reveals that any effect Big "H" felt from the elimination of the C.P.I. adjustment clause (its hedge against inflation) would in all likelihood be offset by the future costs Dee Zee will incur in carrying out the improvements. In other words, the variance in terms between the original and subsequent leases merely reflects the owner's and tenant's negotiations. Because their enduring relationship is the product of Amerus initially procuring the tenant, we conclude—as did the district court—that Big "H" must be held to the bargain it memorialized in the listing agreement. We thus affirm the district court's judgment for Amerus, entitling it to a commission on the "negotiated renewal" between Big "H" and Dee Zee.

**AFFIRMED.**